RECEIVED

7-19-0 6

AT 8:30 _____ M
WILLIAM T WALSH, CLERK

1  JUDITH BROWN CHOMSKY
   LAW OFFICES OF JUDITH BROWN CHOMSKY
2  Post Office Box 29726
   Elkins Park, PA 19027
3  Telephone: (215) 782-8367
   Facsimile: (215) 782-8368
4  (Counsel of Record)

5  RICHARD HERZ, ESQ.
   MARCO SIMONS, ESQ. [S.B. #237314]
6  EARTHRIGHTS INTERNATIONAL
   1612 K Street N.W., Suite 401
7  Washington, DC 20006
   Telephone: (202) 466-5188
8  Facsimile: (202) 466-5189

9  [Counsel For Plaintiffs Continued On Next Page]

10

11              **UNITED STATES DISTRICT COURT**

12                **DISTRICT OF NEW JERSEY**

13

14  JOHN DOE 1, individually and as representative    )   Case No: 07-3406 (JAGJ)
    of his deceased father JOHN DOE 2;                )
15  JANE DOE 1, individually and as representative    )   **MEMORANDUM OF LAW IN**
    of her deceased mother JANE DOE 2;                )   **SUPPORT OF PLAINTIFFS' *EX***
16  JOHN DOE 3, individually and as representative    )   ***PARTE* APPLICATION FOR LEAVE**
    of his deceased brother JOHN DOE 4;               )   **TO FILE COMPLAINT AS**
17  JANE DOE 3, individually and as representative    )   **PSEUDONYMOUS PLAINTIFFS**
    of her deceased husband JOHN DOE 5;               )
18  MINOR DOES 1–4, by and through their              )
    guardian JOHN DOE 6, individually and as          )
19  representative of their deceased mother JANE       )
    DOE 4;                                            )
20  JOHN DOE 7, individually and as representative    )
    of his deceased son JOHN DOE 8,                   )
21                                                    )
                              Plaintiffs,             )
22              v.                                    )
                                                      )
23  CHIQUITA BRANDS INTERNATIONAL,                    )
    INC., a New Jersey corporation;                   )
24  MOE CORPORATIONS 1–10;                            )
    MOES 11-25,                                       )
25                                                    )
                              Defendants.             )
26

27

28

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS
PSEUDONYMOUS PLAINTIFFS

1  Counsel for Plaintiffs
   (continued from first page)

2

3  PAUL HOFFMAN
   SCHONBRUN, DESIMONE, SEPLOW,
   HARRIS & HOFFMAN LLP

4  723 Ocean Front Walk
   Venice, California 90210

5  Telephone: (310) 396-0731
   Facsimile: (310) 399-7040

6

7  ARTURO CARRILLO
   COLOMBIAN INSTITUTE OF
   INTERNATIONAL LAW

8  5425 Connecticut Ave NW #219
   Washington, DC 20015

9  Telephone: (202) 365-7260

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS
PSEUDONYMOUS PLAINTIFFS

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3  I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5  III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6          A.      Courts allow plaintiffs to proceed anonymously to protect them

7                  from retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8          B.      The facts here, where plaintiffs are at grave risk of deadly reprisals,

9                  meet the tests for proceeding anonymously . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10         C.      Plaintiffs in human rights cases are typically permitted to proceed

11                 anonymously . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12  IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3   *Benjamin Doe v. Abington Friends School*, 480 F.3d 252 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . 3

4   *Chavez v. Carranza*, 413 F. Supp. 2d 891 (W.D. Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 7

5   *Doe v. Butler*, 892 F.2d 315 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6   *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7   *Doe v. ExxonMobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8   *Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006) . . . . . . . . . . . . . . . . . . . . 4

9   *Doe v. INS*, 867 F.2d 285 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5–6

10  *Doe v. Liu Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11  *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . 3–4

12  *Doe v. Saravia*, 348 F. Supp. 2d 1112 (E.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6–7

13  *Doe v. Unocal Corp.*, 395 F.3d 932 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14  *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) . . . . . . . . . . . . 3, 6

15  *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16  *PAS v. Travelers Ins. Co.*, 7 F.3d 349 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17  *Roe v. Bridgestone Corp.*, 2007 U.S. Dist. LEXIS 46697 (S.D. Ind. June 26, 2007) . . . . . . . . . 7

18  *United States v. Doe*, 655 F.2d 920 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 7

20  *Xuncax v. Gramajo*, 886 F. Supp. 162, 170 (D. Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 7

21

22

23

24

25

26

27

28

I.   **INTRODUCTION**

Plaintiffs are Colombian residents speaking out against human rights abuses by brutal paramilitary forces. They are justifiably concerned about the possibility of acts of reprisal that could inflict severe physical and mental harm, and even death, upon them or their families. *See* Decl. of Adam Isacson ("Isacson Decl."), filed herewith. Plaintiffs are prepared to provide a statement of their true identities under seal, upon the Court's request.

II.   **STATEMENT OF FACTS**

Plaintiffs all reside in Colombia. If forced to disclose their names publicly, they and their families would be put in grave danger of retributive violence by members of the United Self-Defense Committees of Colombia (*Autodefensas Unidas de Colombia* (AUC)) or other paramilitary groups. Although the Colombian government has recently concluded a demobilization agreement with the AUC, renegade AUC members and other paramilitary forces remain active and continue to commit human rights abuses against civilians, including those who speak out against such abuses. The U.S. State Department's most recent human rights report on Colombia reveals that in 2006 renegade paramilitaries engaged in political killings and kidnappings; forced disappearances; torture; forced displacement, suborning and intimidation of judges, prosecutors, and witnesses; and harassment, intimidation, and killings of human rights workers, journalists, teachers, and trade unionists. Isacson Decl. Ex. B.

According to the Jesuit-founded Center for Popular Research and Education, as reported by the State Department, paramilitaries were responsible for at least 58 civilian deaths, 34 abductions, and 20 cases of torture in the first half of 2006. Isacson Decl. Ex. B. Part 1.c & 1.g. The Organization of American States, in a report on the demobilization process, has "noted with concern the appearance of new groups in the areas where the demobilized units were operating. They are being led by middle-ranking officers (demobilized or not), who in some cases are recruiting former paramilitary combatants. . . . [T]here appear to be emerging situations of possible rearmament and the appearance of armed groups claiming to be the 'new generation of paramilitaries.'" Isacson Decl. Ex. C Part II, IV.

Individuals who seek to document or speak out against paramilitary crimes are particularly

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS PSEUDONYMOUS PLAINTIFFS

1   vulnerable to violent reprisals.  Isacson Decl. ¶¶ 5–9.  The State Department reports that last year

2   "[d]emobilized and renegade paramilitary members killed journalists, local politicians, human rights

3   activists, indigenous leaders, labor leaders, and others who threatened to interfere with their criminal

4   activities or showed leftist sympathies."  Isacson Decl. Ex. B Part 1.g.  Yolanda Izquierdo and

5   Freddy Abel Espitia, two public advocates for paramilitary victims, were assassinated in January

6   2007 after receiving death threats. Carmen Cecilia Santana Romaña, a widow who had met with the

7   National Reconciliation Commission about the murder of her husband by paramilitaries, was

8   assassinated in February 2007 after receiving death threats. *See* Isacson Decl.  ¶¶ 9–13 & Ex. D.

9   These murders exemplify the life-threatening dangers still faced by individuals in Colombia who

10  pursue accountability for paramilitary crimes.

11        Human rights activists also face harassment from the government. As the State Department

12  reports, "Prominent human rights NGOs complained that the government arbitrarily detained

13  hundreds of persons, particularly social leaders, labor activists, and human rights defenders."

14  Isacson Decl. Ex. B Part 1.d.  The State Department also notes the continued existence of

15  cooperation between paramilitaries and official Colombian security forces and that "[s]uch

16  collaboration often facilitated unlawful killings and sometimes may have involved direct

17  participation in paramilitary atrocities." Isacson Decl. Ex. B Part 1.a. Impunity for military personnel

18. who collaborate with renegade paramilitary groups remains prevalent, according to the State

19  Department. Isacson Decl. Ex. B Part 1.g.

20        In light of the ongoing abuses committed by paramilitary forces in Colombia, particularly the

21  retaliatory attacks aimed at victims' advocates and human rights activists, Adam Isacson, an expert

22  on Colombia and the human rights situation there, concludes that it would be prudent for the

23  plaintiffs to proceed under pseudonyms.  Isacson Decl. ¶ 14.

24  **III.    ARGUMENT**

25        **A.    Courts allow plaintiffs to proceed anonymously to protect them from retaliation.**

26        Although courts "must balance the need for anonymity against the general presumption that

27  parties' identities are public information and the risk of unfairness to the opposing party," plaintiffs

28  are generally allowed to proceed under pseudonyms where, *inter alia*, "identification creates a risk

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS
PSEUDONYMOUS PLAINTIFFS

2

1   of retaliatory physical or mental harm." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058,

2   1068 (9th Cir. 2000); *see also Doe v. INS*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) (allowing use of

3   pseudonyms to protect the plaintiff or her family from "possible reprisals"); *United States v. Doe*,

4   655 F.2d 920, 922 (9th Cir. 1977) (allowing pseudonyms "[w]here it is necessary . . . to protect a

5   person from harassment [or] injury").

6       While the Third Circuit has not articulated a set of criteria for deciding when plaintiffs may

7   proceed anonymously, it has decided several such cases without questioning the right of plaintiffs

8   to do so in order to protect their privacy or their safety. *See, e.g., Benjamin Doe v. Abington Friends*

9   *School*, 480 F.3d 252 (3d Cir. 2007) (Americans with Disabilities Act suit against school where

10  parents and child proceed under pseudonyms for medical privacy); *PAS v. Travelers Ins. Co.*, 7 F.3d

11  349 (3d Cir. 1993) (mentally ill plaintiff proceeded anonymously in disability benefits suit against

12  insurance company); *Doe v. Butler*, 892 F.2d 315 (3d Cir. 1989) (battered women proceeded

13  anonymously to challenge city zoning regulations).

14      District courts within this Circuit have adopted a balancing test to weigh the interests of

15  plaintiffs and the public in allowing anonymous proceedings against the interests of defendants and

16  the public in disclosure of plaintiffs' identities:

17          (1) the extent to which the identity of the litigant has been kept confidential; (2) the

18          bases upon which disclosure is feared or sought to be avoided, and the substantiality

19          of these bases; (3) the magnitude of the public interest in maintaining the

20          confidentiality of the litigant's identity; (4) whether, because of the purely legal

21          nature of the issues presented or otherwise, there is an atypically weak public interest

22          in knowing the litigant's identities; (5) the undesirability of an outcome adverse to

23          the pseudonymous party and attributable to his refusal to pursue the case at the price

24          of being publicly identified; and (6) whether the party seeking to sue

25          pseudonymously has illegitimate ulterior motives.

26  *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 467–68 (E.D. Pa. 1997). Against these six

27  factors, the same district court balanced three potential concerns weighing against anonymity:

28          (1) the universal level of public interest in access to the identities of litigants; (2)

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS
PSEUDONYMOUS PLAINTIFFS

3

1     whether, because of the subject matter of this litigation, the status of the litigant as

2     a public figure, or otherwise, there is a particularly strong interest in knowing the

3     litigant's identities, beyond the public's interest which is normally obtained; and (3)

4     whether the opposition to pseudonym by counsel, the public, or the press is

5     illegitimately motivated.

6    *Id.* at 468. The same test has been followed in subsequent cases. *See Doe v. Evans*, 202 F.R.D. 173

7    (E.D. Pa. 2001); *Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006).

8        **B.**     **The facts here, where plaintiffs are at grave risk of deadly reprisals, meet the**

9               **tests for proceeding anonymously.**

10      As noted above, the plaintiffs and their families are at serious risk for reprisals in Colombia

11    as a result of speaking out against the abuses by paramilitary forces. Under similar circumstances,

12    and even where the risks to the plaintiffs were considerably less, courts have found that the test for

13    proceeding anonymously is met. For example, in *Provident Life*, the court allowed the plaintiff to

14    proceed anonymously to avoid the stigma and damage to his professional reputation that might result

15    from the public disclosure of his mental illness. 176 F.R.D. at 467–69. In *Doe v. Evans*, the Court

16    allowed an alleged sexual assault victim to pursue a civil rights action under pseudonym in order to

17    avoid the embarrassment, humiliation, and emotional distress that she feared disclosure of her

18    identity would occasion. 202 F.R.D. at 176. In *Hartford Life*, Judge Linares of this Court allowed

19    a plaintiff with bipolar disorder to sue his insurance company anonymously to protect him from

20    "embarassment and anxiety," "stigmatization" and possible "damage to his professional reputation."

21    237 F.R.D. at 550.

22      The plaintiffs here easily meet the multifactor balancing test used by these district courts:

23    1)     Plaintiffs have to this point kept their identities completely confidential.

24    2)     Plaintiffs have a strong and well-founded fear that if their names are disclosed they will be

25    subjected to violence and even death at the hands of Colombian paramilitaries. These fears are

26    credible and based upon the fact that others who have spoken out against human rights abuses have

27    been killed by paramilitary forces in recent months and years.

28    3)     The public has a strong interest in holding individuals and corporations accountable for

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS
PSEUDONYMOUS PLAINTIFFS

1   violations of U.S. law, whether such violations occur in this country or abroad. Forcing plaintiffs to

2   disclose their identities when doing so would leave them vulnerable to retributive violence will

3   unduly discourage such plaintiffs from bringing meritorious lawsuits. The public therefore has a

4   powerful interest in maintaining the confidentiality of Plaintiffs' identities.

5   4)    The public's ability to follow these proceedings, which will depend largely on the

6   defendants' liability for their acts of supporting the paramilitaries, will not be prejudiced, and the

7   public's interest in knowing the names of these victims is negligible.

8   5)    As discussed above, the public has a great interest in having its laws obeyed and to this end

9   depends largely on lawsuits brought by private individuals whose rights have been violated.

10   Plaintiffs who are situated in countries where violence is rampant and the rule of law is not

11   guaranteed may be discouraged from bringing such lawsuits if they are not allowed to proceed

12   anonymously when their safety requires it.  Such a result would prevent these cases from being

13   decided on their merits and would defeat the accountability and deterrence functions of the law.

14   6)    Plaintiffs have no illegitimate ulterior motives for wishing to proceed anonymously and are

15   prompted only by credible fears for their safety and that of their families.

16         Against these six factors, which strongly weigh in favor of anonymity, the three factors

17   weighing against it are weak or negligible:

18   1)    Although there is always a general public interest in knowing the identities of litigants, there

19   is no reason why the public would be especially interested in knowing the names of these plaintiffs,

20   who are ordinary private citizens of a foreign country.

21   2)    Plaintiffs are not public figures and there is no other reason why the facts of this case present

22   a particular interest in their identities.

23   3)    Defendants have not yet presented any opposition to anonymity, and their concerns can be

24   addressed if and when they do so.

25   At this preliminary stage, there is no reason not to allow plaintiffs to proceed using pseudonyms.

26         The facts here also meet the tests applied in other Circuits where the plaintiffs fear reprisal.

27   In *Doe v. INS*, for example, the Sixth Circuit allowed a student from the People's Republic of China

28   to use a pseudonym in his asylum proceedings.  The petitioner alleged that his conversion to

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS PSEUDONYMOUS PLAINTIFFS

1   Christianity and involvement in political activities during his stay in the United States would subject

2   him and his family members to torture and arrest in China.  The Sixth Circuit stated in a footnote,

3   "Although the use of pseudonyms is not favored, we have resorted to it here to protect the

4   petitioner's family, who remain in China, from possible reprisals." 867 F.2d at 286 n.1.  Certainly,

5   the risk of reprisals in this case is at least as great in this case, where victims of abuses have been

6   assassinated within the past year.

7   　　　　Similarly, in *Advanced Textile Corporation*, a class of Chinese employees working in the

8   garment industry in the Mariana Islands sued their employers under the Fair Labor Standards Act,

9   but desired to remain anonymous for fear of retaliation against them or their families in China.

10   Specifically, the plaintiffs stated that if their identities were disclosed, they would be fired and

11   immediately deported to China, and upon arriving in China, they would likely be arrested and

12   imprisoned. Their families could also face similar threats of physical and economic retaliation. 214

13   F.3d at 1063. The Ninth Circuit considered three factors: "(1) the severity of the threatened harm,

14   (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability

15   to such retaliation." *Id.* at 1068 (citations omitted). The court had no trouble finding that those

16   factors were met in that case, and they are equally strong here. The severity of the threatened

17   harm—possible death—is very high, and the fears of retaliation are entirely reasonable, as the

18   plaintiffs have already suffered the deaths of their family members. Plaintiffs are highly vulnerable

19   to retaliation because of the continued activity of paramilitary forces in Colombia, and the

20   government has been unable to prevent several recent assassinations.

21   　　　　The risk of retaliation to plaintiffs is sufficient to meet any test employed to determine the

22   appropriateness of proceeding anonymously.

23   **C.    Plaintiffs in human rights cases are typically permitted to proceed anonymously.**

24   　　　　Courts have recognized that "John Doe" status is appropriate in cases concerning alleged

25   human rights violations, especially where the plaintiffs or their families continues to reside in the

26   country where the abuses occurred. In *Doe v. Saravia*, 348 F. Supp. 2d 1112 (E.D. Cal. 2004), which

27   concerned a death squad killing in El Salvador, the court noted that it had found "good cause" to

28   allow the plaintiff to proceed under a pseudonym. *Id.* at 1117. In a subsequent discussion of tolling

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS
PSEUDONYMOUS PLAINTIFFS

1  of the statute of limitations due to the conditions in El Salvador, the court noted that "the pl

2  has brought this case under a pseudonym precisely because of fear of reprisals," and could not do

3  so otherwise. *Id.* at 1147.

4      Similarly, in *Roe v. Bridgestone Corp.*, 2007 U.S. Dist. LEXIS 46697 (S.D. Ind. June 26,

5  2007), for example, where the plaintiffs were "adults and children who work on a rubber plantation

6  in the West African nation of Liberia," alleging "forced labor, forced child labor, poor working

7  conditions, and low wages," the court noted that the original judge in the case had "granted the

8  plaintiffs' motion to proceed using pseudonyms." *Id.* at *3. And in *Chavez v. Carranza*, 413 F.

9  Supp. 2d 891 (W.D. Tenn. 2005), plaintiffs alleging abuses by death squads in El Salvador were also

10  permitted to proceed under pseudonyms. *Id.* at 896 n.1.

11      Although most reported decisions have not addressed the pseudonym issue directly, it is clear

12  that the plaintiffs in numerous international human rights cases have been permitted to proceed using

13  pseudonyms. *See, e.g., Doe v. ExxonMobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007) (plaintiffs

14  proceeding pseudonymously in case alleging abuses in Indonesia); *Doe v. Unocal Corp.*, 395 F.3d

15  932 (9th Cir. 2001) (fifteen psuedonymous plaintiffs alleging abuses by the Burmese military,

16  *vacated by grant of rehearing en banc*, 395 F.3d 978 (2003); *Wiwa v. Royal Dutch Petroleum Co.*,

17  226 F.3d 88 (2d Cir. 2000) (one Jane Doe plaintiff in case alleging abuses in Nigeria); *Kadic v.

18  Karadzic*, 70 F.3d 232 (2d Cir. 1995) (two Jane Doe plaintiffs alleging abuses in Bosnia); *Doe v. Liu

19  Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) (psuedonmyous plaintiffs alleging torture in China);

20  *Xuncax v. Gramajo*, 886 F. Supp. 162, 170 (D. Mass. 1995) (one Juan Doe plaintiff alleging abuses

21  in Guatemala). Such use of pseudonyms is equally appropriate here.

22  **IV.    CONCLUSION**

23      For the foregoing reasons, Plaintiffs request that their *Ex Parte* Application for Leave to File

24  Complaint as Pseudonymous Plaintiffs be granted.

25  Dated: July 18, 2007                    Respectfully submitted,

26

27                                          by: Judith Brown Chomsky
                                              Attorney for Plaintiffs

28

MEMO. OF LAW IN SUPPORT OF PLS.' *EX PARTE* APPLICATION FOR LEAVE TO FILE COMPLAINT AS
PSEUDONYMOUS PLAINTIFFS

7