UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Case No. 07-03406 (JMV)

JOHN DOE 1 et al. v. Chiquita Brands International, Inc. et al
_____/

|  |  |  |
|---|---|---|
| Plaintiffs, | : | Civil Action No. 07-03406 |
| John Doe 1 et al, |  |  |
| v. | : |  |
| Defendants, Cyrus Freidheim, | : |  |
| Robert Kistinger, William Tsacalis |  |  |
| Robert Olson, Charles Keiser |  |  |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1631.**

**I.     Introduction**

Both the Southern District of Florida, hearing a consolidated multi-district litigation (MDL) arising out of Chiquita Brands International's financing of Colombian death squads, and the Judicial Panel on Multidistrict Litigation (JPML), have determined that Plaintiffs' claims against the Individual Defendants in the MDL should be remanded to this Court for the purpose of transferring those claims to districts with personal jurisdiction over those defendants. (The Individual Defendants are former Chiquita executives who allegedly devised and implemented Chiquita's illegal terrorism financing scheme.) The question before this Court is what districts are appropriate for transfer, based on where the Individual Defendants were subject to personal jurisdiction in 2007, when this action was originally filed.

Defendants Kistinger, Tsacalis and Olson were residents of Ohio in 2007 and subject to general personal jurisdiction there; the claims against them should be transferred to the federal district court for the Southern District of Ohio. Defendant Freidheim was a resident of Florida and

1

subject to general personal jurisdiction there; the claims against him should be transferred to the Southern District of Florida. Defendant Keiser was also most likely domiciled and subject to jurisdiction in Florida in 2007; and Plaintiffs ask that the claims against him be transferred to Florida.

There is clear authority under 28 U.S.C. § 1631 permitting the transfer of Plaintiffs' claims against the Individual Defendants to districts where they would have been subject to jurisdiction when the case was filed; indeed, there is a presumption in favor of such a transfer. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) (reversing district court for failing to transfer claims against a defendant under Section 1631 after finding personal jurisdiction lacking); *Britell v. United States*, 318 F.3d 70, 73-74 (1st Cir. 2003) (noting a "presumption in favor of transfer"). When transfer is in the "interest of justice" it must be granted. And, here, the Individual Defendants have already pressed statute of limitations defenses (a prime concern for the "interest of justice" analysis). While the MDL Court found that Plaintiffs adequately pled equitable tolling through 2007, the Individual Defendants will no doubt continue to press those defenses and challenge equitable tolling. There is no just reason to create new timeliness issues by forcing plaintiffs to refile their claims, and doing so would be contrary to the purposes of Section 1631.

For over nine years, Plaintiffs – family members of some of the innocent victims of the death squads – have been seeking accountability from Chiquita and the responsible Chiquita officials for their complicity in these gross human rights abuses. Plaintiffs seek a quick resolution of this issue so that they may return to litigating the merits of their claims.

II.     **Factual Background**

Beginning in the 1990s, Defendant Chiquita Brands International financed and gave other forms of material support to the Autodefenses Unidas de Colombia (AUC), the most notorious right-wing paramilitary group in Colombia. *See* Dkt No. 589 in *In re Chiquita Brands Int'l Inc. Alien Tort*

*Statute & S'holder Litig.*, No. 08-01916-MD (S.D. Fla.) (hereinafter "MDL Dkt.") (2d Am. Compl.) ¶ 2. Chiquita agreed to pay the AUC, and in return the AUC made sure that Chiquita's business operations ran smoothly. *E.g.*, *id.* ¶ 90. Between 1997 and 2004, the AUC murdered, tortured, and terrorized thousands throughout the banana-growing regions of Colombia where Chiquita operated, including Plaintiffs and their families. *Id.* ¶ 85. During that same period, Chiquita gave the AUC around $1.7 million and let them smuggle drugs and guns through its ports and on its vessels. *Id.* ¶¶ 85, 138, 148. In 2001, the United States Government designated the AUC as a terrorist organization. *Id.* ¶ 158.

Chiquita's agreement was not the result of rogue employees. The highest levels of Chiquita management in the United States and Colombia, including the Individual Defendants, knew and approved of the arrangement, and actively concealed it. *See* MDL Dkt. No. 1110 (MTD Order, June 1, 2016) at 26-27. Defendant Keiser was a General Manager of Banadex, Chiquita's Colombian subsidiary; he brokered Chiquita's agreement with the AUC in 1997 and was directly responsible for executing the payments under that agreement. *Id.* at 8-9. Defendant Kistinger was the President of Chiquita's Fresh Group; he supervised Defendant Keiser, personally knew about Chiquita's payments to the AUC, and approved them (even after he knew that the AUC had been designated a terrorist organization). *Id.* at 13. Defendant Tsacalis was the Chief Accounting Officer for Chiquita; he also knew of and approved the payments to the AUC, and personally designed procedures to conceal them. *Id.* at 9. Defendant Olson was a Vice President and Chiquita's General Counsel; he too knew and approved of payments to the AUC; he also ignored the advice of Chiquita's external counsel who told him the payments were illegal and had to stop, and misled Chiquita's Board about the illegality of the payments. *Id.* at 11-13. Defendant Freidheim was Chiquita's CEO; he knew about the payments to the AUC, its designation as a terrorist organization, and Chiquita's procedures for hiding the payments; he had ultimate responsibility for the payments while he was

CEO. *Id.* at 9-11.

In March 2007, Chiquita pled guilty to the federal crime of knowingly providing material support to the AUC; Chiquita paid a $25 million fine to the Department of Justice. Press Release, Dep't of Justice, Chiquita Brands International Pleads Guilty to Making Payments to a Designated Terrorist Organization and Agrees to Pay $25 million Fine (Mar. 19, 2007).[1] After a full investigation, U.S. prosecutors found that Chiquita gave the AUC "prolonged, steady and substantial support," which "helped buy weapons and ammunition used to kill innocent victims." *United States v. Chiquita Brands Int'l, Inc.*, Crim. No.: 07-055 (RCL) (Sentencing Memo., Sept. 17, 2007).

### III.   Procedural Background

In 2007, Plaintiffs sued Chiquita – and several pseudonymously named Defendants – in this District. Plaintiffs sought individual and class relief for injuries that resulted from the Defendants' violations of the Alien Tort Statute (the "ATS"), the Torture Victim Protection Act (the "TVPA"), the common law of New Jersey and the laws of Colombia. *Doe v. Chiquita Brands Int'l, Inc.*, Civ. No. 2:07-3406 (D.N.J. July 19, 2007). Chiquita moved to coordinate Plaintiffs' case, under the MDL statute, with several other similar cases that had been filed in federal district courts in New York, Florida and Washington, D.C. The JPML granted that request, and the cases were transferred to the Southern District of Florida for pre-trial proceedings. *See* MDL Dkt. No. 1 (JPML Transfer Order, Feb. 20, 2008).

Plaintiffs amended their complaint in 2010. MDL Dkt. No. 285 (First Amended Complaint, Feb. 26, 2010). Chiquita subsequently filed a motion to dismiss, which the MDL Court largely denied in 2011, holding that Plaintiffs adequately pled Chiquita's liability under the ATS and TVPA. MDL Dkt. No. 412 (MTD Order, June 3, 2011). Chiquita sought interlocutory review, and the MDL Court generally stayed the proceedings pending the resolution of that review. MDL Dkt. No. 587

---

[1] *Available at* https://www.justice.gov/archive/opa/pr/2007/March/07_nsd_161.html.

(Order, Nov. 13, 2012). While the case was otherwise stayed, Plaintiffs were permitted to amend their complaint, naming as Defendants Charles Keiser, Cyrus Freidheim, Roderick Hills,[2] Robert Kistinger, Robert Olson and William Tsacalis, who had been previously identified by pseudonym. MDL Dkt. No. 589 (2d Am. Compl., Nov. 16, 2012).

In July 2014, the Eleventh Circuit reversed the MDL Court in part and remanded for dismissal of Plaintiffs' ATS and TVPA claims against Chiquita. *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (2014). Other claims against Chiquita remained, and the Eleventh Circuit's decision did not address Plaintiffs' claims against the Individual Defendants.

In March 2015, the Individual Defendants moved to dismiss Plaintiffs' claims arguing primarily that they were not subject to personal jurisdiction in several of the districts where they had been sued and that Plaintiffs had not pled viable claims under the TVPA. *See* MDL Dkt. Nos. 733, 735-739. In June 2016, the MDL Court largely denied that motion, finding that Plaintiffs plausibly pled *each of these* Individual Defendants' personal liability for facilitating Chiquita's support of the AUC and denied their motion to dismiss on that basis. *See* MDL Dkt. No. 1110 (MTD Order, June 1, 2016) at 26-27.

The MDL Court could not, however, conclude that the Individual Defendants were subject to personal jurisdiction in New Jersey, a situation that might ordinarily call for a transfer to another court. *Id.* at 31-32. Because it determined that, as an MDL Court, it could not order such a transfer, it held that it was "in the interest of justice" to remand the claims to this Court so Plaintiffs could cure jurisdiction "by transfer to the district court[s] having jurisdiction over these Defendants," *id.* at

---

[2] Defendant Hills passed away in 2014. Plaintiffs' claims against Hills have not been remanded at present because the MDL Court reserved consideration of Hills's separate motion to dismiss due to issues unique to those claims. *See* MDL Dkt. No. 1110 (MTD Order, June 1, 2016) at 6 n.9.

5

34.³ The JPML accepted the MDL Court's suggestion and, over their objection, remanded Plaintiffs claims against five of the Individual Defendants – Keiser, Kistinger, Olson, Tsacalis and Freidheim – to this District. MDL No. 1916, Remand Order (J.P.M.L. Oct. 4, 2016) (Dkt. No. 31, D.N.J., C.A. No. 2:07-03406). The MDL Court envisioned only a temporary remand of Plaintiffs' claims. After the claims against the Individual Defendants are transferred, the claims will be re-consolidated with the rest of the MDL. *See* MDL Dkt. No. 1110 (MTD Order, June 1, 2016) at 34-35.

Also in March 2015, Chiquita and the Individual Defendants moved to dismiss Plaintiffs' claims on the basis of *forum non conveniens*. That motion was denied in November 2016, clearing the way for the claims against Chiquita – and the Individual Defendants, once re-transferred – to proceed. *See* MDL Dkt. No. 1194 (MTD Order on *forum non conveniens*, Nov. 29, 2016).

## IV.  Argument

While the MDL Court found that Plaintiffs had not pled facts supporting personal jurisdiction over the Individual Defendants in New Jersey, *see* MDL Dkt. No. 1110 at 31-32 (MTD Order, June 1, 2016), this Court can cure any lack of jurisdiction through a transfer. Indeed, it must.

Under 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action [ ] to any other such court in which the action . . . could have been brought at the time it was filed." (Emphasis added.) Thus, this Court can fix any personal jurisdiction defect in this District by transferring the claims against the Individual Defendants to districts where they would have been subject to personal jurisdiction when this case was filed.⁴ *See D'Jamoos ex rel. Estate of Weingeroff v.*

---

³ The Defendants moved the MDL Court to reconsider its June 2016 order and the MDL Court recently denied that request. MDL Dkt. No. 1187 (Order of November 14, 2016 denying reconsideration).

⁴ The 2012 naming of the Individual Defendants relates back to the original 2007 filing for statutes of limitations purposes, *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174-75 (3d Cir. 1977), and so Plaintiffs assume that 2007 is the relevant period for Section 1631's "at the time it was filed" clause. With the possible exception of Keiser, however, the year does not make a difference.

*Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) (reversing district court for failing to transfer claims against a defendant under section 1631 after finding personal jurisdiction lacking); *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 224 (3d Cir. 2016) (reversing Delaware district court that refused to transfer claims against Chiquita to New Jersey, its state of incorporation, after finding jurisdiction in Delaware lacking); *see also Fed. Home Loan Bank of Boston v. Moody's Corp.*, 821 F. 3d 102, 116-18 (1st Cir. 2016) (collecting cases and concluding that applying Section 1631 to personal jurisdiction transfers "is consistent with [the practice] of the other circuits").

In 2007, each of the Individual Defendants was subject to personal jurisdiction for these claims in at least one district court in the United States. The Defendants were domiciled in the United States and/or had sufficient minimum contacts with Ohio (or the United States) to establish jurisdiction over them.

Transfer would be in the interest of justice. Plaintiffs firmly believe that their claims are timely and that there are grounds for equitable tolling – several of which Judge Marra already found to be plausibly pled – but Defendants vigorously disagree; they can be expected to continue to challenge the timeliness of Plaintiffs' claims. If these claims were re-filed now – more than 10 years after the deaths – they might be untimely absent the application of an accrual, extension or tolling rule. For that reason alone, transfer serves the interest of justice, and it *must* be granted. Defendants, on the other hand, cannot reasonably claim prejudice from a transfer.

As this Court assesses whether a transfer would be in the interest of justice, it is not starting from a blank slate. When suggesting remand, the MDL Court considered the same factors at issue here, and found that because of the "undue delay and prejudice posed by potential time-bars which may impede a refiling of their complaints," the interest of justice would be served by a remand "allowing Plaintiffs to attempt to cure the jurisdictional defects presented." MDL Dkt. No. 1110 (MTD Order, June 1, 2016) at 34. The JPML then deferred to these findings. MDL No. 1916,

Remand Order (J.P.M.L. Oct. 4, 2016) (Dkt. No. 31, D.N.J., C.A. No. 2:07-03406) at 4.

In sum, because the Individual Defendants were each subject to jurisdiction somewhere in the United States in 2007, the claims against them *can* be transferred pursuant to Section 1631. And, because that transfer would serve the interest of justice, it *must* be done.

### a. The interest of justice supports a jurisdictional transfer of Plaintiffs' claims.

Courts agree that there is a "presumption in favor of transfer" under 28 U.S.C. § 1631, particularly if the claims may be subject to time bars. *See Britell v. United States*, 318 F.3d 70, 73-74 (1st Cir. 2003). The presumption is only rebutted if the transfer is not in the interest of justice. *Fed. Home Loan Bank of Bos.*, 821 F.3d at 119. Congress intended to "protect a plaintiff against either additional expense or the expiration of a relevant statute of limitations in the event that the plaintiff makes an error in trying to select the proper court." *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (internal citation and quotation marks omitted). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time consuming and justice-defeating.'" *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S. Ct. 913 (1962)). Thus, the opponent of transfer bears the burden of showing that the situation is abnormal, and the clear benefits of transfer are outweighed.

Moreover, "[i]f . . . an action or appeal has obvious merit and the filing period has expired, dismissal – even without prejudice – would frustrate one of the principal objectives of Section 1631." *Britell*, 318 F.3d at 75. When assessing the merits, the transferor court ensures that the claims are non-frivolous and would not be in danger of immediate dismissal upon transfer. *See Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987). The claims here are not frivolous: Judge Marra has already denied all of the Individual Defendants' objections to the sufficiency of the allegations, *see* MDL Dkt. No. 1110 (MTD Order, June 1, 2016) at 17-28, demonstrating the merits of Plaintiffs' claims.

> *i. Transfer is in the interests of justice because Plaintiffs would face unnecessary and additional statute of limitations arguments if they have to refile.*

Considering an analogous venue transfer provision, the Supreme Court noted that "[n]umerous cases hold that when dismissal of an action for improper venue would terminate rights without a hearing on the merits because plaintiff's action would be barred by a statute of limitation, 'the interest of justice' *requires* that the cause be transferred." *Burnett v. New York C. R. Co.*, 380 U.S. 424, 430 n.7 (1965) (emphasis added); *see also Matthews v. Am.'s Pizza Co.,* LLC, No. 13-6905, 2014 U.S. Dist. LEXIS 50263, at *6-8 (E.D. Pa. Apr. 10, 2014) ("Because the applicable statute of limitations has expired, dismissing this action would deny Matthews a chance to litigate her claims, even though she timely filed her complaint here. . . . [T]ransfer 'furthers the salutary policy favoring the resolution of cases on the merits.'" (quoting *Britell*, 318 F.3d at 74)). And, even the *possibility* of a statute of limitations bar is often a decisive factor in granting a Section 1631 transfer. *See Hempstead Cty. & Nev. Cty. Project v. United States EPA*, 700 F.2d 459, 463 (8th Cir. 1983) ("[B]ecause the statute of limitations or filing period *may* have expired . . . we deem it 'in the interest of justice' to transfer this matter[.]" (emphasis added)); *Gallant v. Trustees of Columbia Univ.*, 111 F. Supp. 2d 638, 648 (E.D Pa. 2000) (finding that it would be "in the interest of justice" to transfer under Section 1631 where it was "possible that, were the action to be dismissed rather than transferred, the plaintiff would be barred").

Here, Plaintiffs' TVPA claims against the Individual Defendants were timely in 2007: the TVPA has a ten-year statute of limitation, *see* Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73, 74 (28 U.S.C. § 1350 note), and the killings at issue in this case occurred within the ten years preceding the filing of the lawsuit. MDL Dkt. No. 589 (2d Am. Compl.) at 42-46. While the MDL Court also held that Plaintiffs "plausibly" pled equitable tolling through at least 2007, *see* MDL Dkt. No. 1110 at 22, Defendants can be expected to continue to challenge this.

For Plaintiffs' Colombian law claims, the likelihood of prejudice is even more apparent.

9

While the MDL Court similarly ruled that Plaintiffs had adequately pled equitable tolling through 2007, *id.* at 36, the court did not indicate how long the limitations period on these claims would be – how far *beyond* 2007 the claims might be timely. Thus, even if equitable tolling does apply, the claims may be barred if re-filed.

Thus, Plaintiffs' claims might face statute of limitation bars if forced to refile. That risk means this Court should transfer in "the interest of justice." *See Gallant*, 111 F. Supp. 2d at 648 (addressing the need for transfer where the choice of law analysis for statute of limitations had not been decided).

> ii. *Even if there were no statute of limitations concerns, the interest of justice would still require transfer.*

Here, the unnecessary delay and the added cost of refiling also tip the interest of justice in favor of transfer. *Cruz-Aguilera*, 245 F.3d at 1074. And courts have approved transfers even when the convenience of the transferee forum is the only other factor (in addition to the existence of personal jurisdiction). *E.g.*, *Wooten v. Zickefoose*, Civ. No. 10-4599, 2011 U.S. Dist. LEXIS 20329, at *7 (D.N.J. Feb. 28, 2011). Litigating in Ohio and Florida will certainly be more convenient to the Defendants who reside there.

Finally, the presumption in favor of transfer can only be rebutted if it will (1) "unfairly benefit" the proponent, (2) impose an "unwarranted hardship" on an objector, or (3) "unduly burden the judicial system." *Pac. Emplrs. Ins. Co. v. AXA Belgium S.A.*, 785 F. Supp. 2d 457, 475-76 (E.D. Pa. 2011). *See* also *Britell,* 318 F.3d at 75-76. A transfer here would not create any such mischief.

The only "benefit" that Plaintiffs will gain is relief from a potential statute of limitations bar (and avoidance of additional costs and delay) if they are forced to refile. It cannot be unfair for Plaintiffs to receive those benefits as they were the primary reasons for the adoption of Section 1631, and would exist anytime a plaintiff sought a Section 1631 transfer. *Roman*, 340 F.3d at 328; *see*

*also Matthews*, 2014 U.S. Dist. LEXIS 50263 at *6-7.

Plaintiffs seek to transfer the cases against Defendants Kistinger, Tsacalis, and Olson to Ohio. All three of them worked for Chiquita in Ohio, committed the acts that give rise to their liability in Ohio, and still live in Ohio. *See* Declaration of Sean Michael Powers ("Powers Decl.") ¶¶ 4-6. They are not "unduly burdened" by a transfer to the state where they live, conducted their business, and where the acts giving rise to their liability occurred. *See Matthews*, 2014 U.S. Dist. LEXIS 50263, at *7. Plaintiffs seek to transfer the case against Defendant Freidheim to Florida, where he has lived since before the filing of this case, *see* Powers Decl. ¶ 3; it is additionally more convenient for Freidheim to litigate in Florida because claims against him in another Chiquita MDL case are *already* pending in Florida. *See* MDL Dkt. No. 576 (*Valencia v. Chiquita Brands Int'l, Inc.*, 9:09-cv-80508, 3d Am. Compl.). And, as for Defendant Keiser, Plaintiffs also seek to transfer the claims against him to Florida, where he currently resides – which is also undoubtedly convenient for him. Powers Decl. ¶ 7.[5] Even if litigating in their home states did impose some "hardship" on these Defendants that is largely irrelevant because they would face the same hardship if the claims were re-filed.

The transfer poses little to no burden on the judicial system. The MDL Court – which carries the burden of adjudicating these cases for the foreseeable future – clearly expects that these claims will return after transfer. *Id.* If anything, denying transfer will create more work for both the MDL Court and the JPML, because it will likely create additional statutes of limitations questions, additional motions to dismiss, and perhaps even objections to transferring the newly-filed cases to the MDL Court at all.

The presumption in favor of transfer requires that the transfer should go forward.

---

[5] In the event that Plaintiffs' claims against Keiser are transferred to Ohio, he cannot claim prejudice or surprise in light of his substantial conduct in and affecting Ohio. *See* MDL Dkt. No. 1018-1 (Plaintiffs' Notice of New Evidence, Mar. 9, 2016) at 4-6 & n.7.

2. **This Court can and should separate the Defendants and transfer them to the different districts that had jurisdiction over them.**

In this case, transferring claims to the home state of each of the Individual Defendants is the most reasonable approach. Although this will result in separating the claims against the Defendants, that is unavoidable at this point, because neither Chiquita nor Defendant Roderick Hills is currently before this Court. More importantly, severance is permissible for the purpose of transfer. The Third Circuit has held that "where a case could have been brought against some defendants in the transferee district, the claims against those defendants may be severed and transferred." *D'Jamoos*, 566 F.3d at 110.

While there may be circumstances where separating defendants would be inappropriate, this is not such a case. In *D'Jamoos*, the Third Circuit remanded so the District Court could "weigh factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." *Id.* at 11. Here, the fact that these claims will be re-transferred to the MDL Court eliminates most (if not all) of that potential inefficiency. While it is certainly true that the Individual Defendants may ultimately face separate trials, that is neither inefficient nor unfair; indeed, it is unavoidable because if Plaintiffs are forced to refile, they would also face separate trials. And, irrespective of this Court's decision to transfer, Chiquita and other individuals have already been sued in different districts. This means there will likely be several trials in different courts that will involve at least some of the same facts after the MDL Court finishes its pre-trial coordination. And finally, as joint tortfeasors, Defendants need not be tried together. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (*per curiam*) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.").

a. *Plaintiffs' claims against Defendants Kistinger, Olson and Tsacalis should be transferred to the Southern District of Ohio.*

Defendants Kistinger, Olson, and Tsacalis have refused to confirm that they are subject to

personal jurisdiction in Ohio, or to consent to jurisdiction there (or, alternatively, to consent to jurisdiction in Florida), *see* Powers Decl. ¶ 2, but it is undeniable that they are subject to jurisdiction in Ohio. From 2007 to the present, these Defendants have been residents of, and property owners in, Ohio. *Id.* ¶¶ 4-6. They were domiciled in Ohio in 2007 and are domiciled in Ohio now. *Malik v. Cooper Tire & Rubber Co.*, 59 F. Supp. 3d 686, 692 (D.N.J. 2014) (an individual is domiciled in the State "where he last lived and intended to remain"). And an individual is subject to general personal jurisdiction in the state of his or her domicile. *See Milliken v. Meyer*, 311 U.S. 457, 462-64 (1940). Therefore, in 2007, Defendants Kistinger, Olson and Tsacalis were subject to general jurisdiction in the Southern District of Ohio, where Chiquita was headquartered and many of the facts giving rise to these claims arose.

If there is any doubt over their domicile, all three men were also subject to specific personal jurisdiction there because each transacted business and committed the tortious acts at issue here in the Southern District of Ohio. Under Ohio's long-arm statute, a court may exercise personal jurisdiction for claims arising out of a person's "[t]ransacting any business in this state," and also where the person "[c]aus[es] tortious injury by an act or omission in [Ohio]." Ohio Rev. Code Ann. § 2307.832(A)(1), (A)(3). Defendants Kistinger, Olson and Tsacalis worked at Chiquita's headquarters in Cincinnati; they also reviewed, approved and directed the continuation of payments to the AUC from there. This subjects them to specific jurisdiction there as well.

Transfer of the claims against Defendants Kistinger, Olson and Tsacalis to the Southern District of Ohio is plainly in the interest of justice.

b. *Claims against Defendant Freidheim should be transferred to the Southern District of Florida.*

Defendant Freidheim has also refused to confirm that he is subject to personal jurisdiction in Florida, or to consent to jurisdiction there, Powers Decl. ¶ 2, but again he is plainly subject to jurisdiction there. He lived in Florida in 2007 and still does, and was registered to vote there. Powers

13

Decl. ¶¶ 3. Florida was and is his state of domicile, and he was therefore subject to general personal jurisdiction there. Additionally, Freidheim has been sued in the Southern District of Florida by other Plaintiffs in the MDL and has not contested jurisdiction there. *Compare* MDL Dkt. No. 576 (*Valencia* plaintiffs' Third Am. Compl. naming Defendant Freidheim) *with* MDL Dkt. No. 735 (Defendants' motion to dismiss challenging jurisdiction only in D.C. and New Jersey) at 8-11.

The claims against Freidheim could have been brought in Florida in 2007, and they can therefore be transferred there pursuant to Section 1631. And, because he still resides and is facing another lawsuit arising out of the very same facts in Florida, it is certainly fair and equitable to transfer Plaintiffs' claims to the Southern District of Florida.

   c. *Plaintiffs' claims against Defendant Keiser should be transferred to Florida, under either Section 1631 or Section 1404; in the alternative, they can be transferred to Ohio.*

Defendant Keiser's case is slightly more complex because he may have worked for Chiquita outside the United States in 2007, and for much of the time period relevant to Plaintiffs' claims he was in Colombia. By 2012, however, he was clearly domiciled in Florida; and, it appears that he may have been so in 2007 as well.[6] Thus, the claims against him should also be transferred to Florida. If Keiser disputes this, however, Plaintiffs request limited discovery to determine Keiser's jurisdictional contacts.

Some information suggests that Charles Keiser worked for Chiquita in Costa Rica after he left Colombia. But Keiser likely retained a U.S. domicile throughout this period because "[a]n individual can take up residence in a new location and live there for years without changing domicile, so long as the individual forms no intention to stay indefinitely," *Malik v. Cooper Tire & Rubber Co.*, 59 F. Supp. 3d 686, 692 (D.N.J. 2014).

Keiser appears to have owned his current Florida residence since 2004; he also maintained a

---

[6] To the extent that the Court finds that the 2012 filing of the Second Amended Complaint, rather than the initial 2007 filing, is the relevant date, jurisdiction over Keiser in Florida is undisputable.

14

P.O. Box in Florida between 2000 and 2014; and, by 2011, was registered to vote in Broward County. Powers Decl. ¶ 7. Thus the available evidence suggests that Keiser was domiciled in Florida in 2007. *See Malik*, 59 F. Supp. 3d at 692. Although Keiser, like the other Individual Defendants, has refused to confirm that he is subject to personal jurisdiction in Florida or consent to jurisdiction there, he is undoubtedly subject to jurisdiction there now and the weight of the evidence suggests that he was also subject to jurisdiction there in 2007. Thus, transfer to the Southern District of Florida is likewise appropriate for Keiser.

Alternatively, Keiser may also be subject to jurisdiction in the Southern District of Ohio on a specific jurisdiction theory. In determining specific jurisdiction, "[f]irst, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates Due Process of the Fourteenth Amendment." *Ipoint Ventures, LLC v. Pequot Capital MGmt.*, Civ. No. 04-6026, 2005 U.S. Dist. LEXIS 16039 at *1 (D.N.J. July 27, 2005). Both are satisfied here.

Keiser was subject to Ohio's long-arm statute for "transacting [ ] business" in Ohio. Ohio Rev. Code Ann. § 2307.832(A)(1). Out-of-state employees are subject to jurisdiction pursuant to this section based on regular visits to and communications with a company/employer in Ohio. *See e.g.*, *The Rightthing, LLC v. Brown,* No. 3:09-135, 2009 U.S. Dist. LEXIS 7464 at *8-10 (N.D. Ohio Feb. 2, 2009); *Maui Toys, Inc. v. Brown*, No. 12 MA 172, 2014 Ohio App. LEXIS 561 at *22-24 (Ohio Ct. App., 7th Dist., Feb. 13, 2014). Keiser reported to Chiquita executives in Ohio; he frequently visited Ohio in connection with his employment; and he routinely communicated with Chiquita employees in Ohio about Chiquita's payments to the AUC, including by sending the records of such payments to Ohio. *See* MDL Dkt. No. 1018-1 (Plaintiffs' Notice of New Evidence, Mar. 9, 2016) at 4-6 & n.7. Because Plaintiffs' claims arise, in significant part, out of Defendant Keiser's business contacts with Ohio, the long-arm statute is satisfied. *See* Ohio Rev. Code Ann. § 2307.832(C) (limiting jurisdiction

15

based on transacting business to claims "arising from" those transactions).

And jurisdiction in Ohio is likewise consistent with due process. "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The appropriateness of jurisdiction will depend on "the quality and nature of the defendant's activity" but "where the defendant *deliberately* has engaged in significant activities within a State . . . he manifestly has availed himself of the privilege of conducting business there, . . . [and] it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 475-76 (internal quotations omitted and emphasis added). Keiser's purposeful business transactions in and with Ohio, as detailed above, "create[d] a substantial connection with [Ohio]," his contacts were not "random, fortuitous, or attenuated [ ] or [created by] the unilateral activity of another party or a third person." *Id.* at 475. Jurisdiction over him in Ohio is constitutionally proper.

To the extent that Keiser contends he is not subject to jurisdiction in any particular state – for example, because he resided outside the United States in 2007 – his situation would fall under Federal Rule of Civil Procedure 4(k)(2). Under that rule, a federal court may exercise personal jurisdiction over a defendant who is not subject to personal jurisdiction in any particular state for claims arising under federal law. In that event, jurisdiction for federal claims, such as the TVPA, is proper in *any* district – including this one.

The constitutional inquiry under Rule 4(k)(2) is simply whether the defendant has "minimum contacts" with the United States as a whole. *See World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721-222 (5th Cir. 1996) (noting that 4(k)(2) was adopted to close the gap in federal question cases for situations where a defendant had sufficient contacts with the US but escaped any state's long-arm statute or general jurisdiction). There can be no doubt that Keiser – a U.S. citizen, who allegedly helped a U.S. company break U.S. laws, who also lived in the U.S. before and after his

16

time abroad – has sufficient contacts with the United States to subject him to jurisdiction here.

Although the claims against Keiser need not be transferred if Rule 4(k)(2) applies – and cannot be transferred pursuant to Section 1631 because jurisdiction would not be lacking in this District – Plaintiffs nonetheless submit that venue transfer to the Southern District of Florida would be appropriate under 28 U.S.C. § 1404. Rather than leave Kesier as the lone Individual Defendant in this Court, it makes more sense to join his case with others proceeding in another court. And since he has been domiciled in South Florida since at least 2011, the "convenience of parties" under Section 1404(a) plainly favors the Southern District of Florida.

Finally, to the extent that Defendant Keiser disputes the jurisdictional facts that Plaintiffs have put before the Court, Plaintiffs submit that limited jurisdictional discovery would be appropriate. "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citation and quotation marks omitted). And, "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdiction discovery should be sustained." *Id.* (internal citation and quotation marks omitted).

V.   **Conclusion**

For the reasons stated herein, Plaintiffs hereby move to transfer the claims against Defendants Kistinger, Olson, and Tsacalis to the Southern District of Ohio and the claims against Defendants Freidheim and Keiser to the Southern District of Florida.

To the extent that this Court does not transfer Plaintiffs' claims against Defendant Keiser to Florida (or in the alternative, to Ohio) pursuant to 28 U.S.C. § 1631, Plaintiffs' move for them to be transferred to Florida pursuant to 28 U.S.C. § 1404 and Federal Rule of Civil Procedure 4(k)(2). In

17

the alternative, Plaintiffs request limited jurisdictional discovery with respect to Defendant Keiser.

Dated: December 16, 2016                    Respectfully submitted,

/s/ Judith Brown Chomsky
Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Marco Simons
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

***Counsel for John Doe I et al.***