**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Case No. 07-03406 (JMV)**

JOHN DOE 1, *et al.*,

      Plaintiffs,

      v.                               Civil Action No. 2:07-cv-03406

CHIQUITA BRANDS INTERNATIONAL, INC.,
CYRUS FREIDHEIM, CHARLES KEISER,
ROBERT KSTINGER, ROBERT OLSON, AND
WILLIAM TSACALIS,

      Defendants,

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR TRANSFER
PURSUANT TO 28 U.S.C. § 1631 AND OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS**

**MOTION DAY:** February 21, 2017

i

## TABLE OF CONTENTS

I.     Introduction .................................................................................................................1

II.    Background ...................................................................................................................2

III.   Argument .....................................................................................................................4

       a.   The MDL Court set up this transfer procedure in the "interest of justice" ................4

       b.   Personal jurisdiction is proper in this District...................................................5

       c.   The "interest of justice" analysis does not turn on a plaintiff's mistake ......................8

       d.   Even if Plaintiffs' "mistake" is considered, transfer is still in the interest of justice
            because it was not of the degree courts have considered relevant when denying
            transfer ...............................................................................................................10

       e.   Severance is appropriate here .........................................................................19

IV.    Conclusion...................................................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Brown v. Grimm*, 483 F. Supp. 40 (N.D. Ill. 1979) ........................................................... 13

*Brown v. Grimm*, 624 F. 2d 58 (7th Cir. 1980) ........................................................... 13-14

*Burnett v. New York City Railroad Co.*, 380 U.S. 424 (1965) ............................................. 8

*Carmichael v. Pressler & Pressler, LLP*, 646 Fed. Appx. 192 (3d Cir. Apr. 15, 2016) .............. 5, 6

*Chavez v. Dole Food Co.*, 947 F. Supp. 2d 438 (D. Del. 2013) ....................................... 9, 10

*Chavez v. Dole Food Co.*, 836 F, 3d 205 (3d Cir. 2016) ............................................. 9, 10

*Chicosky v. Presbyterian Medical Center*, 979 F. Supp. 316 (D.N.J. 1997) ......................... 9, 18

*Clark v. Milam*, 830 F. Supp. 316 (S.D. W. Va. 1993) .................................................. 7-8

*Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974) .................................. 16 n.9

*Cote v. Wadel*, 796 F.2d 981 (7th Cir. 1986) ............................... 11 & n.6, 12, 13 n.7

*De James v. Magnificence Carries, Inc.*, 654 F.2d 280 (3d Cir. 1981) .................................. 5

*Deleski v. Raymark Indus., Inc.*, (3d Cir. 1987) ...................................................... 17

*Dindio v. First Babylon, Inc.*, 495 F. Supp. 2d 126 (D. Mass. 2004) ................................. 8-9

*D'Jamoos v. Pilatus Aircraft Ltd.*, No. 07-1153, 2009 U.S. Dist. LEXIS 91576, 2009 WL 3152188 (E.D Pa. Oct. 1, 2009) ..................................................................................*passim*

*D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) ................................. 19

*Druckner v. Fernandez*, Civ. No. 90-5797, 1991 U.S. Dist. LEXIS 7463, 1991 WL 97441 (E.D. Pa. June 3, 1991) ............................................................................................ 6, 7

*Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967) ................................................. 12

*Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446 (D.N.J. 1984) ...... 5

*Family Federation for World Peace v. Moon*, 129 A.3d 234 (D.C. Ct. App. 2015) ........................ 6

*Gallant v. Trustees of Columbia Univ.*, 111 F. Supp. 2d 638 (E.D. Pa. 2000) ..................... 16 n.9

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) ........................................................................... 11

*Hempstead Cty. & Nevada Cty. Project v. EPA*, 700 F.2d 459 (8th Cir. 1983) ...................................... 16 n.9

*Kelso v. Luna*, Civ. No. 08-371, 2008 WL 4525564, 2008 U.S. Dist. LEXIS 75153 (W.D. Okla. Sept. 29, 2008) ................................................................................................................... 13

*Lafferty v. Gito St. Riel*, 495 F.3d 72 (3d Cir. 2007) .................................................................. 8 & n.4, 11 n.5

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) .......................................... 14-15

*Lizarbe v. Rondon*, 642 F. Supp. 2d 473 (D. Md. 2009) ................................................................... 16

*In re Mid-Atlantic Toyota Antitrust Litig.*, 525 F. Supp. 1265 (D. Md. 1981) ...................................... 6

*Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233 (D. Md. 1992) ......................................................... 17-18

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) ........................................................... *passim*

*Owens-Illinois, Inc. v. Rapid American Corp.*, 124 F.3d 619 (4th Cir. 1997) .......................................... 7

*Pittsburgh Terminal Corp. v. Mid Alleghany Corp.*, 831 F.2d 522 (4th Cir. 1987) .................................... 7

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ...................................................................................... 1,5

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717 (S.D.N.Y. 2003) ....... 14-15

*Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392 (2d Cir. 1992) ................................................ 17

*Stanifer v. Brannan*, Civ. No. 3:06-373, 2007 WL1520932, 2007 U.S. Dist. LEXIS (W.D. Ky. May 23, 2007) ................................................................................................................... 13

*Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009) ..................................................................... 13-14

*Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006) .................................................................... 12

*Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171 (3d Cir. 1977) ........................................................ 16 n.9

*Vanguard Financial Services Corp. v. Johnson*, 736 F. Supp. 842 (N.D. Ill. 1990) .................................. 13

*Wayne v. Jarvis*, 197 F. 3d 1098 (11th Cir. 1999) ...................................................................... 16 n.9

*Wood v. Santa Barbara Chamber of Commerce, Inc.*, 507 F. Supp. 2d 1128 (D. Nev. 1980) ............... 17 n.10

*Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515 (9th Cir. 1983) ................. 14, 17 & n.10

**Legislative Sources**

28 U.S.C. § 1350 ........................................................................................................ 16

28 U.S.C. § 1404 ................................................................................................... 11. n.5

28 U.S.C. § 1406 ................................................................................................... 11 n.5

28 U.S.C. § 1631 ................................................................................................... 11 n.5

Senate Report No. 102-249 (1991) ........................................................................ 16

**Rules**

Local Rule 7.1(h) ...................................................................................................... 1 n.1

I.     <u>**Introduction**</u>

After wasting Plaintiffs' time and the Court's attention by refusing to state where they are

subject to, or would consent to, personal jurisdiction, the Individual Defendants have not contested

that they may be sued in Ohio and Florida. The entire purpose of both the suggestion of remand

from Judge Marra, who is overseeing the Chiquita multidistrict litigation (MDL), and the actual

remand ordered by the Judicial Panel on Multidistrict Litigation (JPML), was to allow transfer of

these claims to courts where there is personal jurisdiction. Thus Defendants' apparent concession

that they are subject to jurisdiction in the courts suggested by Plaintiffs should end the inquiry, and

transfer should be ordered.

Instead, with their surprise Motion to Dismiss, Dkt. 55,[1] the Individual Defendants seek

dismissal on the same grounds presented in the MDL. They fault Plaintiffs for choosing "not to

present" any argument that personal jurisdiction is proper in this District. Dkt. 56 (hereinafter,

"Opp.") at 1. But those arguments are ordinarily presented in *opposition* to a motion to dismiss that

the Individual Defendants had not previously suggested they would file, not in *favor* of transfer

under 28 U.S.C. § 1631, where a prerequisite is that the court lacks jurisdiction. Plaintiffs, unlike

Defendants, had not thought to use this Court as a forum to second-guess Judge Marra's rulings.

The only proper question here is whether transfer is warranted, and it plainly is.

Nonetheless, if they wish to re-litigate these questions, Plaintiffs are happy to do so.

Plaintiffs' position that jurisdiction is proper in this Court is correct. The Individual Defendants

argue that *Shaffer v. Heitner*, 433 U.S. 186 (1977), prevents this Court from exercising jurisdiction on

the basis of their officer and director positions in a New Jersey corporation. But they ignore the

precise holdings in *Shaffer*, which was decided in the context of a very different Delaware quasi-in-

---

[1] Pursuant to L. Civ. R. 7.1(h), Plaintiffs file this as a combined reply brief in support of their original motion and in opposition to Defendants' cross-motion. Plaintiffs understand that no reply brief in support of the cross-motion is permitted.

rem personal jurisdiction statute. It remains an open question whether personal jurisdiction is proper under *Shaffer* in the context of a long-arm statute such as New Jersey's, and the weight of authority suggests that jurisdiction is permissible.

But even if this Court lacks personal jurisdiction that is no basis to deny transfer. Defendants turn Section 1631's "interest of justice" analysis on its head by ignoring the factors – like the prejudice Plaintiffs may face from potential time bars – consistently recognized in this Circuit. Instead they contend that transfer is not in the "interest of justice" solely because Plaintiffs supposedly knew this Court lacked jurisdiction when they amended and did it anyway to gain a strategic advantage. Not so. Plaintiffs had no reason to believe that jurisdiction was improper when they amended because *Shaffer* does not foreclose jurisdiction in this case, and Plaintiffs' amendment was an attempt to serve the obviously efficient purpose of consolidating these cases with the case against Chiquita.

Indeed, at the same time as they contend that Plaintiffs were seeking some strategic advantage by suing all Defendants in one lawsuit, the Individual Defendants also claim that transfer is unwarranted because all claims against them and Chiquita *must* be brought in one lawsuit. Apparently, Plaintiffs both should not have sued the Defendants *with* Chiquita, and now cannot sue them *without* Chiquita. Their argument: ignores the fact that the MDL Court already severed the Individual Defendants; flies in the face of the Third Circuit's clear holding that severance is permitted under Section 1631; and cannot be reconciled with the fact that the Individual Defendants will have to defend separate suits if Plaintiffs are forced to file anew.

## II.   **Background**

While the general background of this case has now been well trod, the Defendants' argument requires a closer inspection of the posture of the litigation in the MDL Court at the time of Plaintiffs' 2012 amendment.

On June 3, 2011, the MDL Court ruled on Chiquita's motion to dismiss, largely sustaining Plaintiffs' claims under the ATS and the TVPA. MDL Dkt No. 412. In July, Chiquita moved the MDL Court to certify an interlocutory appeal, MDL Dkt. No. 454, and Plaintiffs moved for reconsideration on the dismissal of their claims under Colombian law, MDL Dkt. No. 457. There was extensive briefing on both issues through March 2012, when the MDL Court granted both motions. MDL Dkt. No. 516 (order reinstating Plaintiffs' claims under Colombian law); MDL Dkt. No. 518 (order certifying interlocutory appeal).

The MDL Court's order gave other plaintiff groups in the MDL – who had not already or incorrectly pled Colombia law claims – the opportunity to amend. MDL Dkt. No. 516 at 5-6. A month later, in April, the Supreme Court decided *Mohamed v. Palestinian Authority*, 132 S. Ct. 1702 (2012), ruling that individuals but not corporations can be liable under the Torture Victim Protection Act ("TVPA"). In the wake of *Mohamed* and the MDL Court's order allowing amendment, several of the other plaintiff groups moved for leave to file amended complaints adding Colombian law claims and claims against individual defendants. *E.g.*, MDL Dkt. Nos. 535, 536, 538 and 541. In September, the MDL Court granted that request and also gave the Defendants leave to seek a stay if the Eleventh Circuit granted interlocutory appeal. MDL Dkt. No. 556.

On September 27, the Eleventh Circuit granted Chiquita's request for interlocutory review. MDL Dkt. No. 579. And, on November 8, Chiquita filed a consent motion seeking a stay, subject to Plaintiffs' right to amend their complaint to add the Individual Defendants. MDL Dkt. No. 586. The stay motion was granted, MDL Dkt. No. 587, and as agreed, Plaintiffs amended in the Individual Defendants, MDL Dkt. No. 589.

Though the case was otherwise stayed until 2015, the Individual Defendants waived service in 2013. MDL Dkt. Nos. 605, 608, 609, 611,620, 622.

3

III.   **Argument**

   **a.  The MDL Court set up this transfer procedure in the "interest of justice."**

Plaintiffs agree that the MDL Court did not make a final decision on whether transfer would be in the "interest of justice." Opp. at 10 n.4. But the MDL Court's decision should not be, as Defendants would like, so casually ignored.

When the MDL Court suggested remand, it was faced with virtually the same issue that this Court is now confronting: to dismiss for lack of jurisdiction or to remand for potential transfer. The MDL Court already considered Defendants' jurisdictional arguments *and* their argument about why a transfer would not be in the "interest of justice."[2] It concluded nonetheless that a remand would still be in the "interest of justice" to avoid undue delay and because of the potential prejudice to Plaintiffs from potential time bars. MDL Dkt. No. 1110 at 34. The Defendants did not challenge that determination when they moved for reconsideration. MDL Dkt. No. 1121.

Judge Marra has been supervising this litigation for nine years, overseeing it from the stage at which Chiquita was the only named defendant and the Individual Defendants were only listed by pseudonym, through the point at which the Individual Defendants were amended into the existing complaint, and ultimately to the various motions to dismiss that culminated in this remand. Yet the MDL Court did not fault Plaintiffs for any supposed "strategic" motives in amending their complaint to name the Individual Defendants – an obviously more efficient approach than filing new lawsuits. Instead, it ordered that remand was warranted "in the interest of justice . . . for the limited purpose of allowing Plaintiffs to attempt to cure the jurisdictional defects presented as to the

---

[2] In the MDL, Plaintiffs briefed why a transfer would be in the "interest of justice" in their opposition to the Individual Defendants' motion to dismiss. MDL Dkt. No. 826 at 34-35. On reply, the Defendants objected, arguing, as here, that transfer is inappropriate because Plaintiffs sought it to obtain a strategic advantage. MDL Dkt. No. 903 at 9. This issue was fully considered by the MDL Court.

Individual Defendants by transfer to the district court(s) having jurisdiction over these Defendants."
MDL Dkt. No. 1110 at 34. That assessment should not lightly be disturbed.

In this Court, Defendants certainly devote more effort to casting aspersions on Plaintiffs'
motivations for amending an existing complaint rather than filing new complaints. But Defendants'
primary argument against transfer – that personal jurisdiction is lacking under *Shaffer* – was before
the MDL Court. This Court need not reconsider the MDL Court's analysis.

**b. Personal jurisdiction is proper in this District.**

If this Court wishes to revisit Judge Marra's decisions, it should conclude that personal
jurisdiction is proper here. First, with respect to Defendant Keiser, he has not disputed that in 2012
he was subject to jurisdiction pursuant to Rule 4(k)(2). Thus, he is subject to jurisdiction in this
Court. *See* Dkt. No. 42-2 (hereinafter, "Transfer Mot.") at 16-17.[3]

Second, claims against the remaining Individual Defendants are based on their conduct as
officers and directors of Chiquita, a New Jersey corporation. Because New Jersey's long-arm statute
extends personal jurisdiction "as far as is constitutionally permissible," *see, e.g.*, *De James v. Magnificence
Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981), that, as explained below, is sufficient here.

Defendants rely almost solely on *Shaffer v. Heitner* for the proposition that personal
jurisdiction is improper, but they mischaracterize that case. As the other case they cite correctly
notes, *Shaffer* concerned an assertion of "*in rem* jurisdiction over nonresident defendants." *Electro-
Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1450 (D.N.J. 1984). In fact, *Shaffer*
concerned a very specific Delaware long-arm statute that relied on a quasi-in-rem jurisdiction theory:
"The Delaware courts based their assertion of jurisdiction in this case solely on the statutory
presence of appellants' property in Delaware." 433 U.S. at 213; *see also Carmichael v. Pressler & Pressler,*

---

[3] Defendant Keiser also has not objected to a venue transfer to Florida under 28 U.S.C. § 1404.
Transfer Mot. at 16-17.

*LLP*, 646 Fed. Appx. 192, 195 (3d Cir. Apr. 15, 2016) (describing *Shaffer*'s holding as "the Due
Process Clause generally forbids state courts from exercising jurisdiction over an out-of-state
defendant based solely on the presence of the defendant's property in that state"). In that context,
the mere fact that the defendants were also "officers and directors of a Delaware corporation" was
insufficient. *Shaffer*, 433 U.S. at 216. But the Court implied that under a different statutory
framework, jurisdiction might well be proper *on the same facts. Id.* ("Delaware, unlike some States, has
not enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State.").

And numerous subsequent cases have concluded that under a different framework than
Delaware's former quasi-in-rem jurisdiction law, a state may exercise specific jurisdiction over an
out-of-state officer or director's acts on behalf of a corporation incorporated in that state. As the
D.C. Court of Appeals recently explained, "the *Shaffer* case was based on Delaware's assertion of
jurisdiction based on property owned by the directors in that state, not on an assertion of
jurisdiction based on a long-arm statute." *Family Fed'n for World Peace v. Moon*, 129 A.3d 234, 243
(D.C. Ct. App. 2015). Thus, where the defendants "voluntarily undertook to serve as a director of a
nonprofit District corporation," *Shaffer* did not necessarily preclude D.C. from exercising jurisdiction
over them. *Id.*

Many courts have concluded that jurisdiction is proper under an express consent statute –
such as the one that Delaware passed in the wake of *Shaffer. See, e.g., In re Mid-Atlantic Toyota Antitrust
Litig.*, 525 F. Supp. 1265, 1272-73 (D. Md. 1981) ("When one becomes a director of a Delaware
corporation he necessarily has substantial contacts with the state of Delaware. He undertakes to
guide the conduct of an entity governed by Delaware law and he subjects himself to Delaware law
concerning corporate fiduciaries. In addition, he receives the benefits and protections of Delaware
law governing corporate directors."). In *Drucker v. Fernandez*, Civ. No. 90-5797, 1991 U.S. Dist.

6

LEXIS 7463, 1991 WL 97441 (E.D. Pa. June 3, 1991), the court considered a Pennsylvania consent

statute, and concluded that it provided an adequate basis for jurisdiction where

> the very conduct complained of was undertaken by the individual defendants in their
> capacity as directors and made possible only by virtue of their corporate positions.
> By accepting and exercising the powers of directorships of a Pennsylvania
> corporation, these defendants purposely invoked the benefits and protection of
> Pennsylvania law. Wherever they act, when the defendant directors act in their
> official capacities as a board, they are acting pursuant to and by virtue of powers
> conferred by the laws of Pennsylvania. When they commit wrongful acts in
> exercising their duties as directors, they fairly and reasonably should anticipate being
> called to answer for such conduct in Pennsylvania.

*Id.* at *13-14.

Courts have also concluded that a long-arm statute such as New Jersey's – which does not

specifically mention officers or directors, but extends jurisdiction to the limits of the Constitution –

also may suffice. In *Pittsburgh Terminal Corp. v. Mid Alleghany Corp.*, 831 F.2d 522 (4th Cir. 1987), the

Fourth Circuit considered specific jurisdiction over officers and directors under the West Virginia

long-arm statute – which did *not* expressly address officers and directors or contain a consent

provision, but which generally "confer[red] jurisdiction over non-residents who are: 'transacting any

business in this State.'" *Id.* at 527 n.7. The court rejected the notion that *Shaffer* required "that a State

explicitly provide that accepting a directorship in a domestic corporation would make the director

amenable to suit there . . . ." *Id.* at 527. Like New Jersey's, West Virginia's long-arm statute "is

coextensive with the full reach of due process." *Owens-Illinois, Inc. v. Rapid Am. Corp.*, 124 F.3d 619,

627 (4th Cir. 1997); *see also Drucker*, 1991 U.S. Dist. LEXIS 7463 at *14 (citing *Pittsburgh Terminal* with

favor).

In *Clark v. Milam*, 830 F. Supp. 316 (S.D. W.Va., 1993), the court also followed *Pittsburgh*

*Terminal*, allowing jurisdiction over nonresident officers and directors of a West Virginia corporation

because "[d]efendants [could] not contend credibly they were unaware GW LIFE was a West

Virginia corporation when they accepted and exercised directorships. Neither should they be

surprised at being haled into this Court to answer charges of alleged wrongdoing in their capacities as officers and directors of the corporation." *Id.* at 321. Here too, the: Defendants surely knew that they were accepting officer and director positions in a *New Jersey* corporation.

Defendants cite no cases, and Plaintiffs have found none, that reject specific jurisdiction over officers and directors in the context of a long-arm statute such as New Jersey's, that extends jurisdiction to the limits of the Constitution. Because the Constitution permissibly allows specific jurisdiction over nonresident officers and directors, for claims arising out of their acts on behalf of a resident corporation, jurisdiction is proper here.

### c. The "interest of justice" analysis does not turn on a plaintiff's mistake.

Even if Plaintiffs were mistaken that jurisdiction is proper in this District that would not justify dismissal rather than transfer. Congress enacted 28 U.S.C. § 1631 to encourage litigation on the merits and avoid undue prejudice, like time bars, to a plaintiff that filed in the wrong district. *See* Transfer Mot. at 8-11. Defendants ignore both the clear intent of the statute, and Supreme Court and Third Circuit law, which all make clear that the focus of the "interest of justice" analysis should be on avoiding prejudice and the rigid dismissal of claims. *Burnett v. New York C. R. Co.*, 380 U.S. 424, 430 n. 7 (1965) ("Numerous cases hold that when dismissal of an action for improper venue would terminate rights without a hearing on the merits because plaintiff's action would be barred by a statute of limitation, 'the interest of justice' requires that the cause be transferred."); *Lafferty v. Gito St. Riel*, 495 F.3d 72, 79 (3d Cir. 2007) ("the § 1406(a) [and § 1631] transfer provision[s] [are] designed to preserve claims that rigid application of dismissal rules may bar").[4] *See also Dindio v. First*

---

[4] *See also Lafferty*, 495 at 79 (Sections 1406(a) and 1631 "do not [even] require that prejudice should result from filing an action in an improper forum if the initial filing was made in good faith" and "the filing itself of a lawsuit, even in an improper forum, 'shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure,' and 'toll[s] whatever statutes of limitation would otherwise apply.'" (Quoting *Goldlawr*, 369 U.S. at 466-67)).

*Babylon, Inc.*, 328 F. Supp. 2d 126, 128 (D. Mass. 2004) ("Courts have found that transfer is particularly appropriate under § 1406(a) where, absent a transfer, the plaintiff faced a loss of his cause of action due to the operation of the applicable statute of limitations." (internal citations omitted)).

Contrary to Defendants' suggestion, courts in this circuit *do* apply a rebuttable presumption in favor of transfer, which requires a strong showing by a *defendant* that the transfer is not in the "interest of justice." *Compare* Opp. at 9 n.3 *with* Transfer Mot. at 8. *See also D'Jamoos v. Pilatus Aircraft Ltd.*, No. 07-1153, 2009 WL 3152188, 2009 U.S. Dist. LEXIS 91576, at *7-8 (E.D. Pa. Oct. 1, 2009) (on remand, finding that transfer and severance served the "interest of justice" and applying the First Circuit's presumption in favor of transfer). And, even in the face of an obvious mistake, courts in this Circuit routinely transfer cases where a plaintiff *may* face statute of limitations bars. *See e.g.*, *id.* at *8 (transferring even though it was "not a case of rectifying a mere inadvertent filing error" (internal quotations omitted)); *Chicosky v. Presbyterian Med. Ctr.*, 979 F. Supp. 316, 319 (D.N.J. 1997) (transferring because of time bars even though plaintiff's argument for personal jurisdiction was based "on a single telephone call"); *see also Dindio*, 328 F. Supp. 2d at 129-30 (granting a transfer where plaintiff's argument for jurisdiction was wrong but "not so far fetched as to support a conclusion that the filing here was not in good faith" and plaintiff risked losing "a substantial part of its cause of action" without a transfer).

The Third Circuit's most recent case on Section 1631 transfers, *Chavez v. Dole Food Co.*, 836 F.3d 205 (3d Cir. 2016), which is nearly identical to this one, reaffirms these principles. There, foreign agricultural workers sued Chiquita (and others) in Delaware for personal injuries arising out of pesticide exposure. The plaintiffs invoked the Delaware court's general jurisdiction, which the district court rejected, finding no "factual allegations suggesting Chiquita's affiliations with Delaware [were] so continuous and systematic as to render it essentially at home." *Chavez v. Dole Food Co.*, 947

9

F. Supp. 2d 438, 444 (D. Del. 2013). The district court refused to transfer the case to New Jersey because the plaintiffs had filed similar litigation in Louisiana and the transferred Delaware case would likely be barred by the first-filed rule. *Id.* Under Defendants' approach here, the jurisdictional finding would have precluded transfer. But it did not. The Court of Appeals reversed the district court, holding that it "had a statutory obligation to transfer the claims against that defendant to another district court where personal jurisdiction would be present." *Chavez,* 836 F.3d at 223. Neither the Third Circuit nor the district court considered the adequacy of plaintiffs' jurisdictional showing when addressing the propriety of the 1631 transfer.

So too here. As in *Chavez,* the MDL Court found that while Plaintiffs alleged some facts supporting jurisdiction in New Jersey, the allegations were insufficient to support jurisdiction over the Defendants in New Jersey. *Compare* MDL Dkt. No. 1110 at 31-32 *with Chavez,* 947 F. Supp.2d at 442-44 (recognizing that Chiquita had some contacts with Delaware that fell well short of Supreme Court's general jurisdiction case law). As in *Chavez,* even if Plaintiffs failed to adduce enough facts to support jurisdiction, that simply is not a reason for denying transfer.

**d. Even if Plaintiffs' "mistake" is considered, transfer is still in the interest of justice because it was not of the degree courts have considered relevant when denying transfer.**

While there are courts that have considered a bad faith jurisdictional argument, it is only *one* factor in their "interest of justice" analysis. And Plaintiffs here simply have not made the type of bad faith error addressed in those cases. In Defendants' cases, transfer was denied where a plaintiff, with full information about the conduct and contacts of the defendant, deliberately chose a forum they knew was wrong. And, in the few cases that Defendants cite – where a transfer was denied in the face of a statute of limitation bar – there was obvious forum shopping and gamesmanship. As explained below, Plaintiffs were not seeking any improper strategic advantage by amending rather than re-filing their claims.

Defendants also rely primarily on out-of-circuit decisions affirming a district court's denial of transfer. Such authority is of marginal relevance. In those cases, the district court's decision was reviewed for an abuse of discretion and an affirmance "do[es] not imply that a district court would necessarily err by granting a plaintiff's motion to transfer an action that the plaintiff's attorney filed in the wrong court because of an obvious error." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1202 n.6 (4th Cir. 1993). As the Supreme Court observed with respect to Section 1406(a), its language – which mirrors Section 1631 – "is amply broad enough to authorize the transfer of cases, *however wrong the plaintiff may have been in filing his case*." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (emphasis added).

To the extent that Defendants rely on cases under 28 U.S.C. § 1404, that transfer provision gives the district judge an even greater degree of discretion than is afforded under either 28 U.S.C. § 1406(a) or 1631.[5] An appellate decision affirming the denial of a Section 1404 transfer has even less bearing on the issues here.[6]

---

[5] Both 28 U.S.C. § 1406(a) and 1631 limit a district court's discretion to deny transfer. If it is in the interest of justice, transfer is mandatory. 28 U.S.C. § 1631 ("the court shall . . . transfer"); 28 U.S.C. § 1406(a) (the court "shall . . . transfer"). Section 1404, on the other hand, does not command a district court to transfer a case under any circumstances. 28 U.S.C. § 1404(a) ("For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer"). A district court has more discretion under Section 1404. This distinction makes sense because – unlike a pure Section 1404 case, where there are two forums where the case *can* be litigated – denying a 1406(a) or 1631 transfer leads to dismissal of the action. *See Lafferty v. Gito St. Riel*, 495 F.3d 72, 76-77 (3d Cir. 2007) ("Distinctions between §§ 1404(a) and 1406(a) have to do with discretion, jurisdiction, and choice of law. Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum. . . . Section 1406(a) comes into play where plaintiffs file suit in an improper forum. . . .  In those instances, district courts are required either to dismiss or transfer to a proper forum.").

[6] In *Cote v. Wadel*, 796 F.2d 981 (7th Cir. 1986), for example, the district court had denied a motion to transfer under Section 1404. *See id.* at 983. Judge Posner remarked that "an appellate court can[not] readily discern and correct" what is in the interest of justice and that the court could not reverse a denial of transfer absent a "clear abuse of discretion." *Id.* at 985.

Tellingly, Defendants fail to address the facts or findings made by the district courts in the cases they cite. On inspection, each case arose under materially different circumstances and none suggests that the interest of justice favors dismissal here. Their reliance on *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967), is especially perplexing. There, the Fifth Circuit *affirmed* the transfer of an Ohio tax action to Florida. In that case, the government filed suit in Ohio after the defendant moved and was no longer subject to personal jurisdiction there; the statute of limitations would have barred any subsequent action. *Id.* at 814, 816. There was no indication that the government had done any minimum contacts analysis, and the only basis for believing that jurisdiction was proper in Ohio was that the tax liability accrued in Ohio. *Dubin* supports transfer here.

        *i. No jurisdictional "mistake" here could justify a denial of transfer.*

Defendants cite out-of-circuit cases suggesting that an "obvious error" on the part of Plaintiffs' counsel *might* justify a denial of transfer. *Nichols*, 991 F.2d at 1202 n.6. But, where it is considered, a mistake is only *one* factor considered by courts as part of the "interest of justice" analysis. *See Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006) (district court must consider whether a "new action would be time barred" and a bad faith obvious mistake is only a factor). Regardless, the type of "obvious error" referred to is not present here. In *Nichols*, for example, the plaintiff filed where it was "very obvious" that there was no personal jurisdiction, and then "imposed substantial costs over a period of five years" on the defendant, "which was forced to defend in a foreign and improper forum," and on the court itself. 991 F.2d. at 1202. *See also Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (finding that the "obvious mistake" had "impose[d] costs on opposing parties and on the judicial system"). Here, as explained above, Plaintiffs have a good argument in favor of personal jurisdiction. Moreover, due to the MDL, Plaintiffs' choice of amending in the Individual Defendants to the New Jersey complaint neither imposed any improper burdens on the Defendants nor on any court, since they would have been litigating in the MDL

Court regardless of where Plaintiffs had filed. Such additional litigation burdens as may exist have been imposed only by the Individual Defendants themselves – by moving to reconsider Judge Marra's decision, opposing remand at the JPML, and now opposing transfer before this Court. While they may be entitled to fight every step of the way, they should not be heard to complain about the burdens of doing so.

In the cases Defendants cite, plaintiffs also had full knowledge about the scope and location of the defendant's relevant conduct, but ignored those jurisdictional facts and filed in the wrong forum. In one case, a Kentucky plaintiff was involved in a car accident with Oklahoma drivers in Oklahoma, but "filed [his] complaint in Kentucky without having the slightest reason to believe that he could obtain personal jurisdiction." *Stanifer v. Brannan*, Civ. No. 3:06-373, 2007 WL 1520932, 2007 U.S. Dist. LEXIS 38171, at *3 (W.D. Ky. May 23, 2007). *See also Brown v. Grimm*, 483 F. Supp. 40, 41 (N.D. Ill. 1979) (same fact pattern).[7] Plaintiffs here certainly did not and could not have reasonably had the same knowledge about where the Individual Defendants carried out their tortious acts. *See Vanguard Fin. Serv. Corp. v. Johnson*, 736 F. Supp. 842, 841 (N. D. Ill. 1990) (granting transfer and distinguishing cases, like *Cote v. Wadel*, from those where "[d]eterminations as to where various claims arose are necessarily fact specific and may thus be the subject of good faith, reasonable disagreements among counsel."). In these cases, moreover, the Courts of Appeals recognized plaintiffs had not even attempted to justify jurisdiction in the transferor court. *Stanifer*, 564 F.3d 455, 456 (6th Cir. 2009) (plaintiff had not "attempt[ed] to establish jurisdiction" or "offer[ed] even one

---

[7] There are other variations on this fact pattern, *i.e.*, where there was a clearly discernible and defined set of jurisdictional facts. For example, in *Cote*, a Wisconsin plaintiff sued a Michigan lawyer that represented her in a Michigan action for an injury that arose out of a dispute she had with a doctor in Michigan. "[T]here was no act or omission in Wisconsin" or any connection between the Michigan lawsuit and Wisconsin. 796 F.2d at 984. The plaintiff in *Cote*, of course, knew those facts because she was a party in the Michigan lawsuit and had retained the Michigan lawyer.

13

reason, *plausible or not*, for filing in what was obviously the wrong venue"); *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir. 1980) ("plaintiff asserted absolutely no basis for personal jurisdiction").

Similarly, in the other cases Defendants cite, a plaintiff – who previously litigated against the same opponent or on the same issue – knowingly filed in the wrong forum. In one case, an involuntary patient in a California state hospital bizarrely sought a writ of *habeas corpus* in Oklahoma. *Kelso v. Luna*, Civ. No. 08-731, 2008 WL 4525564, 2008 U.S. Dist. LEXIS 75153 (W. D. Okla. Sept. 29, 2008), *aff'd*, 317 F. App'x 846, 848 (10th Cir. 2009). "To grant habeas relief, the Court must have jurisdiction over the Petitioner's custodian," *id.* at *1, which the petitioner knew because they had filed and lost an earlier and identical *habeas* petition in Oklahoma on personal jurisdiction grounds. *Id.* at *3 n.1. The court found "no allegations suggesting that the Respondents have any connection to the State of Oklahoma" and "no facts which could support this Court's exercise of jurisdiction." *Id.* at *2, 3 n.1. Still, the court's denial of transfer did not prejudice the plaintiff because – as long as he was a custodian of the hospital – he could file "a new action in a proper forum." *Id.* at *4. *See also Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515 (9th Cir. 1983) (affirming a transfer denial where the plaintiff had previously sued the defendants in California, the forum they knew was proper forum; then strategically filed a new case in Nevada; and, later sought to transfer that newly filed case back to California because there was no jurisdiction). Countenancing *repeated* mistakes may not be in the interest of justice, but Plaintiffs have not made any.

Plaintiffs' decision to add the Individual Defendants to their existing complaint in the Chiquita MDL was informed by two reasonable beliefs. First, they believed that personal jurisdiction was proper in New Jersey, due to Defendants' status as officers and directors of a New Jersey corporation and the likelihood (still unknown) that relevant additional conduct occurred in New Jersey. Second, Plaintiffs were already in the MDL when they amended, and reasonably believed that the MDL Court, standing in the shoes of the transferor court, could transfer the case to a forum

with jurisdiction if necessary. *See* MDL Dkt. No. 826 (Pl.'s MTD Opp.) at 35-36 (citing *Ski Train In re Ski Train Fire in Kaprun, Austria on Nov. 11*, 2000, 257 F. Supp. 2d 717 (S.D.N.Y. 2003)); MDL Dkt No. 1134 (Pl.'s Opp. to Motion for Reconsideration) at 5-7 (arguing that *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 39 (1998), limits MDL court's ability to transfer to "preserve[] a plaintiff's choice of venue.").[8]

> ii. *Plaintiffs had no nefarious motive and were not forum-shopping when they amended an existing complaint against Chiquita, it was the most reasonable option.*

Defendants also speculate that Plaintiffs were trying to seek a strategic advantage by amending their existing complaint rather than filing at least three new lawsuits. Defendants claim that Plaintiffs were attempting (1) to ensure that there would be federal claims in the lawsuit when *forum non conveniens* was decided; and (2) to take advantage of relation-back, Opp. at 14, but their arguments are meritless.

The *forum non conveniens* argument is frivolous, for two reasons. First, in 2012 – when Plaintiffs amended their complaint to add the Individual Defendants – they still had federal claims against Chiquita itself pursuant to the federal Alien Tort Statute (ATS), which would not be dismissed until the Eleventh Circuit decided *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014), two years later. Plaintiffs did not need federal claims against the Individual Defendants to accomplish this alleged strategic purpose. Indeed, *Cardona* was decided based on the Supreme Court's decision in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), which itself had not been decided at the time of amendment. Plaintiffs could not predict the future. Second, even if Plaintiffs *had* filed multiple new lawsuits against the Individual Defendants, those would have

---

[8] Plaintiffs also erred on the side of efficiency – by attempting to consolidate these cases in one forum; if however they were wrong to sue the Defendants in New Jersey, the Defendants would suffer no prejudice by transfer. Defendants ignore these factors, *cf.* Transfer Mot. at 10-11, but then spin their heels and argue that they are critical when seeking a new, unwarranted rule that would preclude severance.

accomplished this purpose just as easily, because the MDL Court would, and ultimately did, consider the *forum non conveniens* motion as to all defendants in the various cases before it, not just those filed in New Jersey.

Defendants' argument that plaintiffs deliberately ignored an absence of jurisdiction in an attempt to have the statute of limitations relate back to 2007 also fails. In 2012, Plaintiffs did not face obvious time bars in New Jersey (or anywhere else), which they were trying to avoid through amendment. The TVPA has a ten-year statute of limitations. *See* 28 U.S.C. § 1350 note. And, while *some* of the deaths in this case occurred before 2002, those Plaintiffs had strong arguments for tolling (which the MDL Court has, to date, accepted). First, those claims could not have begun to accrue as courts have uniformly held that statutes of limitation do not run during the pendency of a civil war, as was the case in Colombia until at least 2006. *See e.g.*, *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 480-81 (D. Md. 2009) (collecting cases and noting that "courts have routinely applied the doctrine [of equitable tolling] when it appears that plaintiffs had no reasonable opportunity to pursue claims as a result of civil war, violence . . ."). Second, Plaintiffs could not have discovered Defendants' true identities until at least 2009, as they admit, so the claims would enjoy equitable tolling. *See* Opp. at 11; S. Rep. No. 102-249 (1991) at 10-11 (TVPA claims "should also be tolled where the defendant has concealed his or her whereabouts or the plaintiff has been unable to discover the identity of the offender"). Contrary to the Defendants' suppositions, Plaintiffs were not plotting a way to avoid time bars by amending to take advantage of the relation-back doctrine; they did not need it.[9] But

---

[9] In a footnote, Defendants suggest that the presence of a potential issue of relation back of claims against the Individual Defendants militates against transfer. However, a potential statute of limitations problem supports transfer under Section 1631. *See Hempstead Cty. & Nev. Cty. Project v. EPA*, 700 F.2d 459, 463 (8th Cir. 1983); *Gallant v. Trustees of Columbia Univ.*, 111 F. Supp 2d 638, 648 (E.D. Pa. 2000).

Moreover, Defendants' argument is based on two unfounded assumptions. First, they seem to assume that Plaintiffs' claims against Defendants were untimely at the time of the amendments. Second, they assume that, under the law of each transferee jurisdiction, Plaintiffs' claims would be untimely and not entitled to relation back. Defendants simply ignore the caselaw holding that as

now – more than four years later – there is a very real chance of prejudice due to statutes of limitations if Plaintiffs' claims are dismissed.

Moreover, an attempt to preserve the statute of limitations against defendants who were clearly already on notice of the claims against them would not be an improper strategic advantage warranting a denial of transfer. *Cf. Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983) ("Justice would not be served by transferring Wood's claims back to a jurisdiction that he purposefully sought to avoid.").[10] For example, courts have denied transfer where plaintiffs were untimely in the *transferor* forum and sought transfer to take advantage of longer limitations period in the *transferee* forum. *See e.g., Deleski v. Raymark Indus., Inc.*, 819 F.2d 377, 379 (3d Cir. 1987) (statute of limitations in transferor forum had expired, plaintiff sought to take advantage of longer period in transferee forum); *Spar, Inc. v. Info Res., Inc.*, 956 F.2d 392, 394-95 (2d Cir. 1992) (same). Others have denied transfer when the complaint was knowingly filed in the *only* forum where the claims would have been timely (even though jurisdiction there was obviously faulty). *See e.g., Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 235 n.1 (D. Md. 1992) (noting that "plaintiffs,

---

officers of Chiquita who participated in the events alleged, Defendants had constructive knowledge of the claims filed in 2007. *Clark v. Universal Builders, Inc.,* 501 F.2d 324 (7th Cir.1974), *cert. denied* 419 U.S. 1070 (1974) (amendment to add officers, directors, and shareholders permitted when they were active participants in events alleged as basis of suit and had constructive notice). Further, the case law on determining relation back for anonymous defendants also varies according to the jurisdiction. Compare *Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999 with *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174–75 (3d Cir. 1977). Defendants' generalized speculation about the possible decisions of various transferee courts about claims against different individual defendants who are not all similarly situated cannot support their opposition to transfer.

[10] The *Wood* case is an example of the type of gamesmanship, not present here, that *might* justify a denial of transfer. There, the plaintiff had first filed a lawsuit in California against several California residents and sought a transfer of that case to Nevada because "he could not get a fair trial in the Central District of California . . . based . . . upon the failure of all of the [ ] judges to disqualify themselves . . . ." *Wood*, 507 F. Supp. 2d 1128, 1138 (D. Nev. 1980). The California court denied transfer, and then plaintiff filed a new suit in Nevada. *Id.* The Nevada court dismissed on personal jurisdiction grounds and denied plaintiff's request to transfer the case *back* to California because the Nevada suit was "blatant forum-shopping." *Id.* at 1139.

knowing of their stale claims in other jurisdiction, rushed to take advantage of Maryland's generous statute of limitations before it was too late"). But none of these cases has any bearing here, because the Defendants have not shown that the Plaintiffs would have been untimely in the transferee forum when the action was filed in the transferor forum. *Cf. Chicosky*, 979 F. Supp. at 321 (transferring but noting that "[i]f it were clear the the Pennsylvania statute of limitations expired before the action was filed in New Jersey, Defendants . . . would be correct that transfer would be inappropriate"). As explained above, Plaintiffs were certainly timely when they amended in 2012, and the Defendants have made no argument otherwise.

In addition to their reasonable belief that jurisdiction was (and is) proper in this Court, the circumstances surrounding their amendment provide a benign explanation for why Plaintiffs did not file new complaints. In September 2012, the MDL Court granted a request by several other plaintiff groups to amend their complaints to add Chiquita's responsible officers and directors. MDL Dkt. No. 556. Simultaneously, the MDL Court implied that proceedings in the MDL would be stayed if the Eleventh Circuit accepted Chiquita's request for interlocutory review. *Id.* After that review was granted, and with a pending stay motion, Plaintiffs followed the instructions of the MDL Court and amended their existing complaint.

Ironically, Defendants' own brief also demonstrates the actual, reasonable reasons for amending the existing complaint rather than filing new suits – because it is more efficient to sue all defendants in a single suit. Defendants themselves argue that it is now not in the "interest of justice" to litigate claims against them separately from those against Chiquita. Opp. at 17-20. While not unjust, Plaintiffs thought it would be inefficient to do so, which is why they amended their Complaint instead of filing new cases. It is difficult to understand why this was unreasonable in light of the arguments that Defendants make concerning the propriety of severing them from Chiquita.

e.  **Severance is appropriate here.**

As Plaintiffs already argued, Chiquita and the Defendants are simple joint tortfeasors and there is no rule requiring Plaintiffs to sue them in the same action. Transfer Mot. at 12. Defendants have not made a Rule 19 argument with respect to Chiquita, and have made no showing that Chiquita is "essential" to their defense. *See D'Jamoos v. Pilatus Aircraft Ltd.*, No. 07-1153, 2009 U.S. LEXIS 91576, at *10-11(E.D. Pa. Oct. 1, 2009) (on remand, severing and transferring where "[t]here [was] no showing that the presence of Pilatus is essential to the non-Pilatus defendants' ability to defend themselves from the plaintiffs"). Moreover, if Plaintiffs are forced to file anew, Defendants will find themselves in the exact same position: consolidation for pretrial purposes in the MDL and then *potentially* trying their cases apart from Chiquita. Transfer Mot at 12. This argument also goes un-rebutted.

Rather, Defendants' claim – that there can be no transfer unless claims against all parties end up in the same court – is refuted by the very case they cite. In *D'Jamoos*, the Third Circuit *rejected* the district court's holding that "[a] plaintiff must be able to establish that personal jurisdiction exists over each defendant in the transferee district." 566 F.3d 94, 110 (3d Cir. 2009) (quoting 2008 U.S. Dist. LEXIS 31581, at *31 n. 8). Instead, the Circuit held that "transfer of the entire action was not [the district court's] only option. Quite to the contrary, we have interpreted section 1631 to permit the transfer of all or only part of an action." *Id.*

Defendants seek to conjure a contrary rule through selective citation. They concede as they must that *D'Jamoos* laid out a balancing test rather than a rule barring severance: "the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." Opp. at 18 (quoting 566 F.3d at 111). In so doing, *D'Jamoos* included a "See" cite to *Sunbelt Corp. v. Noble, Denton & Assocs.,* 5 F.3d 28, 33-34 (3d Cir. 1993) and included the following parenthetical: "(stating that a court 'should not sever if

the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places')." Defendants treat the *D'Jamoos* court's parenthetical to *Sunbelt* as the *D'Jamoos* holding. Clearly, it was not.

Defendants' supposed rule barring severance conflicts with the actual *D'Jamoos* holding that potential inefficiency is just a factor; it does not rule out transfer. Indeed, some litigation of the same issues in multiple places would always happen upon severance – defendants would not properly be part of the same case unless there were common issues among them. Defendants' "rule" would swallow the *D'Jamoos* balancing test, and is belied by the fact that on remand, the district court in *D'jamoos* itself *did* sever and transfer. *See D'Jamoos*, No. 07-1153, 2009 U.S. LEXIS 91576, at *10-11(E.D. Pa. Oct. 1, 2009) (noting "[a]s with any complex litigation, the courts involved will coordinate discovery to ensure that wasteful duplication is avoided, easing any concerns about cost or inefficiency.").[11]

Defendants do not cite *Sunbelt* directly, because *Sunbelt* was a Section 1404 venue transfer case. In Section 1404 cases, it might make sense to deny transfer venue where the court would have to sever claims, because 1404 transfer is discretionary, and a court should not create duplicative litigation where it would not otherwise exist. But in the 1631 context, the litigation cannot proceed in the transferor court, and where, as here, there are different defendants that are subject to suit in different venues, they cannot proceed together.

Given this, Defendants' proposed new rule would create odd and unfair anomalies in this and similar cases. Had Plaintiffs sued the Individual Defendants in the respective districts in which they concede jurisdiction, there would be no issue. Defendants cite no reason for a different result in

---

[11] As the district court in *D'Jamoos* recognized, if either Chiquita or the Defendants think that efficiency can be gained by litigating together, they can always "submit to the jurisdiction" of a court. *See D'Jamoos*, 2009 U.S. LEXIS 91576, at *10-11 (noting that "should the non-Pilatus defendants feel that it is essential that their case be tried in conjunction with Pilatus, they could submit to the jurisdiction of the district court in Colorado").

the context of a transfer motion. Indeed, here Plaintiffs *tried* to do precisely what *Defendants* claim is most efficient, to sue them in one action, but that, Defendants say, warrants *dismissal*. It does not.

## IV.  <u>Conclusion</u>

For the reasons stated herein, and for the reasons provided in their Motion for Transfer, Plaintiffs move to transfer the claims against Defendants Kistinger, Olson, and Tsacalis to the Southern District of Ohio and the claims against Defendants Freidheim and Keiser to the Southern District of Florida.


Dated: February 13, 2017                              Respectfully submitted,

                                                      <u>/s/ Judith Brown Chomsky</u>
                                                      Judith Brown Chomsky
                                                      **Law Offices of Judith Brown Chomsky**
                                                      Post Office Box 29726
                                                      Elkins Park, PA 19027
                                                      Tel: 215-782-8367
                                                      Fax: 202-782-8368

                                                      Marco Simons
                                                      Marissa Vahlsing
                                                      **EarthRights International**
                                                      1612 K Street N.W., Suite 401
                                                      Washington, D.C. 20006
                                                      Tel: 202-466-5188
                                                      Fax: 202-466-5189

                                                      ***Counsel for John Doe I et al.***