UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE 1, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHIQUITA BRANDS INTERNATIONAL, INC., CYRUS FREIDHEIM, CHARLES KESIER, ROBERT KISTINGER, ROBERT OLSON, AND WILLIAM TSACALIS,<br><br>*Defendants*. | Civil Action No. 07-3406 (JMV)<br><br><u>OPINION</u> |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of the motion filed by Plaintiffs John Doe 1, John Doe 2, Jane Doe 3, and Minor Does 1-4 (collectively, "Plaintiffs") to transfer the case pursuant 28 U.S.C. § 1631. D.E. 42. Defendants Cyrus Freidheim, Charles Kesier, Robert Kistenger, Robert Olsen, William Tsacalis (collectively, the "Individual Defendants") filed a cross-motion to dismiss. D.E. 55. The parties also submitted supplemental letters. D.E. 75, 76, 77. The Court reviewed all submissions made in connection the motion,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the

---

[1] Plaintiffs brief in support of their motion for transfer will be referred to hereinafter as "Plfs. Transfer Br." D.E. 42, 59 (corrected); the Individual Defendants' brief in opposition to transfer and cross-motion to dismiss and will be referred to hereinafter as "Indiv. Defs. Mot. & Opp." D.E. 56; Plaintiffs' opposition to the Individual Defendants' motion to dismiss and reply in support of Plaintiffs' motion for transfer will be referred to herein as "Plfs. Opp & Reply." D.E. 58; Individual Defendants' reply in support of their cross-motion to dismiss will be referred hereinafter as "Defs. Reply." D.E. 63.

reasons stated below, Plaintiffs' motion to transfer is **GRANTED**, and the Individual Defendants' motion to dismiss is **DENIED**. Plaintiffs' claims against Defendants Kistinger, Olson, and Tsacalis shall be severed and transferred to the United States District Court for the Southern District of Ohio. Plaintiffs' claims against Defendants Freidheim and Keiser shall be severed and transferred to the United States District Court for the Southern District of Florida.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case has a long and complicated factual and procedural history, which is unnecessary to recount in full detail here. In short, this suit is part of a multidistrict litigation ("MDL") that arises out of the alleged torture and killing of thousands of Colombian citizens and residents by Colombian paramilitary organizations and guerilla groups. This suit alleges that beginning in the 1990s, Chiquita Brands International, Inc. ("Chiquita") executives were involved in a scheme pursuant to which Chiquita financed and provided material support to these paramilitary organizations and guerilla groups. MDL D.E. 589.[2] Plaintiffs are family members of some of the alleged victims of the torture and killings.

Plaintiffs filed their Complaint against Defendant Chiquita on July 19, 2007. D.E. 1. The Complaint brought fifteen counts against Chiquita. Among other things, the Complaint alleges violations of the Alien Tort Statute, 28 U.S.C. § 1350; the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note; customary international law; common law of the United States; the statutes and common law of New Jersey; the laws of Colombia; and certain international treaties, agreements, conventions and resolutions. Compl. at ¶¶ 85-157.

This suit along with a number of related cases were consolidated in the Southern District of Florida pursuant to the multidistrict litigation ("MDL") statute, 28 U.S.C. § 1407. In April

---

[2] The MDL is docketed as *In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholder Litig.*, No. 08-01916 (S.D. Fla.).

2012, while the matter was pending appeal from the MDL court, the Supreme Court ruled in *Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), that individuals, but not corporate entities, could be held liable under the TVPA. Later that year, Plaintiffs filed a Second Amended Complaint to include the Individual Defendants. MDL D.E. 589.

On October 4, 2016, the MDL Panel remanded Plaintiffs' claims against the Individual Defendants to this Court pursuant to MDL Judge Kenneth A. Marra's recommendation that the case be remanded to this Court for the limited purpose of allowing Plaintiffs to seek transfer under Section 1406 or 1631. D.E. 31. The Clerk of the Court reassigned this case to this Court on October 4, 2016. D.E. 32.

As noted, there are currently two motions before this Court. Plaintiffs' filed a motion to transfer their suit against the Individual Defendants on December 16, 2016. D.E. 42.[3] The Individual Defendants filed a brief in opposition and a cross-motion to dismiss. D.E. 55. Plaintiffs filed a reply on February 13, 2017. D.E. 58. The Individual Defendants filed a reply on February 22, 2017. D.E. 63.

## II. MOTION TO TRANSFER AND TO SEVER

28 U.S.C. § 1631 provides as follows:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to

---

[3] Plaintiffs' filed a corrected memorandum in support of their motion to transfer on February 15, 2017. D.E. 59. This memorandum included changes to formatting rather than substantive alterations. *See* D.E. 42, 59. The Court considers the corrected brief as the operative document for this motion.

3

> which it is transferred on the date upon which it was actually filed
> in or noticed for the court from which it is transferred.

Thus, in order for a district court to affect a transfer pursuant to Section 1631, the Court must find that it does not possess personal jurisdiction over the defendant, "that the action 'could have been brought' in the transferee district and . . . that transfer is in the interest of justice." *Covelman v. Hotel St. Regis*, 2016 WL 762661, at *1 (D.N.J. Feb. 25, 2016) (citing *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109 (3d Cir. 2009)). Transfer is within the discretion of the district court. *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 558 (3d Cir. 1993) ("The district court may, in its discretion, transfer this case pursuant to 28 U.S.C. § 1631 if a motion to do so is seasonably filed."). Courts have found that "that Congress intended to create a presumption—albeit a rebuttable one—in favor of transfer." *Britell v. United States*, 318 F.3d 70, 73 (1st Cir. 2003), *cited with approval in Abunasser v. Holder*, 343 F. App'x 756, 759 (3d Cir. 2009); *see also Abunasser*, 343 F. App'x at 759 ("Where a district court itself lacks jurisdiction over a case, it *shall* transfer the matter to a court that has jurisdiction, *unless*, after an examination of the record, the district court determines that it would not be in the interest of justice to do so." (emphasis added)).

While the party seeking transfer bears the burden of establishing that a transferee court possesses personal jurisdiction over a defendant, "in the preliminary stages of the litigation . . . that burden is light. Prior to trial, the plaintiff is only required to establish a *prima facie* showing of jurisdiction." *D'Jamoos*, 566 F.3d at 110 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). A prima facie showing of personal jurisdiction "requires that [the movant] establish with reasonable particularity sufficient contacts between the defendant and the forum state. It is insufficient to rely on bare pleadings alone; rather a plaintiff must establish facts relevant to personal jurisdiction by affidavits or other competent evidence." *Covelman*, 2016 WL 762661,

at *2 (internal quotations and citations omitted). A defendant is subject to the jurisdiction of a district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed.R.Civ.P. 4(k)(1)(A). Accordingly, "section 1631 permits a transfer of a case only to a court in which the case originally could have been brought." D'Jamoos, 566 F.3d at 107. "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

A Court may also sever a suit and transfer to multiple districts when appropriate. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *see also D'Jamoos*, 566 F.3d at 110 ("[W]here a case could have been brought against some defendants in the transferee district, the claims against those defendants may be severed and transferred while the claims against the remaining defendants, for whom transfer would not be proper, are retained.").

### III. ANALYSIS

As discussed, under Section 1631, there are three requirements for transfer: (1) this Court lacks personal jurisdiction over the party, (2) the actions against the Individual Defendants could have been brought in the Southern District of Ohio and the Southern District of Florida, respectively, and that (3) transfer to those districts is "in the interest of justice." The Court considers each requirement in turn.

### a. Personal Jurisdiction Over the Individual Defendants

#### i. This Court Does Not Possess Personal Jurisdiction Over the Individual Defendants

As an initial matter, this Court must first determine whether it has personal jurisdiction over any of the Individual Defendants. In order to transfer a case under 28 U.S.C. § 1631, a district

court must first "find[ ] that there is a want of jurisdiction." The Plaintiffs request transfer under Section 1631, but also alternately argue that "[i]f this Court wishes to revisit Judge Marra's decisions, it should conclude that personal jurisdiction is proper here." Plfs. Opp & Reply at 5.[4] The Court finds that it lacks personal jurisdiction over the Individual Defendants. Plaintiffs do not argue that the Court has general jurisdiction over the Individual Defendants, so the issue turns on whether the Court has specific jurisdiction. "Sitting in New Jersey, the Court may exercise jurisdiction over an out-of-state defendant only to the extent authorized by the state's long-arm statute. New Jersey's long-arm statute permits the exercise of personal jurisdiction to the fullest extent permissible under the Due Process Clause." *Covelman*, 2016 WL 762661, at *2 (citing *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998)). A court may exercise specific personal jurisdiction over a defendant if the defendant has "maintained systemic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). The parties fail to cite any case law in this District or within the Third Circuit to further the position that the Individual Defendants, as nonresident directors and officers of Chiquita, are subject to the

---

[4] The Court notes that Plaintiffs make this alternate argument that personal jurisdiction is proper in this District in direct response to the Individual Defendants' argument that Plaintiff should have known that amending their Complaint to include the Individual Defendants was improper in this District because this District did not possess personal jurisdiction over the Individual Defendants. *See* Plfs. Opp & Reply at 4-8 ("This Court need not reconsider the MDL Court's analysis [on Plaintiffs' motivations for filing in this District]," however, "[i]f this Court wishes to revisit Judge Marra's decisions, it should conclude that personal jurisdiction is proper here.").

jurisdiction of the state in which their employer corporation is a resident.[5] Therefore, the Court finds this Court does not possess personal jurisdiction over any of the Individual Defendants.[6]

### ii. Personal Jurisdiction is Present in the Southern District of Ohio and the Southern District of Florida, Respectively

Next, Plaintiffs must show that Southern District of Ohio has personal jurisdiction over Individual Defendants Kistinger, Olson and Tsacalis and that the Southern District Florida has personal jurisdiction over Individual Defendants Freidheim and Keiser. Therefore, the Court examines whether the Southern District of Ohio and the Southern District of Florida could have possessed general personal jurisdiction over the respective Individual Defendants in 2007—when Plaintiffs filed their Complaint.[7]

---

[5] The parties focus on whether, in light of *Shaffer v. Heitner*, 433 U.S. 186 (1977), Plaintiffs had grounds for a reasonable belief that amending their Complaint to include the Individual Defendants. The Court does not analyze the specific application of *Shaffer* to the facts here because Plaintiff has not cited to any case in this Circuit to support its claim that this District possesses personal jurisdiction over the Individual Defendants.

[6] The Court notes that Individual Defendant Keiser presents an unusual set of facts as described below in note 8. Plaintiffs make the argument that if the Court finds that no state possesses personal jurisdiction over Keiser, then under Federal Rule of Civil Procedure 4(k)(2), this District may exercise personal jurisdiction over Keiser. Plfs. Transfer Br. at 16. However, as described below, the Court finds that Plaintiffs' have made a prima facie showing that the Southern District of Florida possesses personal jurisdiction over Keiser, and the Individual Defendant have presented no evidence to rebut this showing. Therefore, the Court finds does not reach the Rule 4(k)(2) argument.

[7] The Court notes that there is some debate among the parties regarding the operative date – whether it is 2007 when the Complaint was initially filed or 2012 when the Individual Defendants were added. Both parties cite both dates. However, neither side has provided any detailed analysis of the issue. Therefore, the Court assumes without deciding that 2007 is the relevant date for the Section 1631 analysis. *See Does 1-144 v. Chiquita Brands Int'l, Inc.*, 2018 WL 369779, at *6 (D.D.C. Jan. 11, 2018) ("*Chiquita*") ("As a preliminary matter, the parties dispute the relevant date for purposes of the 'at the time it was filed' clause of Section 1631. Plaintiffs argue that the naming of the individual defendants in 2012 relates back to the original 2007 filing for statute of limitations purposes and thus assume that 2007 is the relevant date. The individual defendants, however, raise the specter that the transferee courts might consider the date that the individual defendants were added–2012–as the operative date. Given that neither party has sufficiently briefed this issue, the Court assumes without deciding that 2007 is the

Plaintiffs first seek to transfer their suits against Individual Defendants Kistinger, Olson, and Tsacalis to the Southern District of Ohio pursuant to Section 1631. Pl. Br. at 12-13. In Ohio courts, "[g]eneral jurisdiction exists where a defendant has such continuous and systematic contacts with the forum state that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Arlington Bank v. BEE, Inc.*, 2010 WL 5078257 (Oh. Ct. App. Dec. 9, 2010) ("Ohio courts may exercise jurisdiction over a person who is a resident of Ohio, because a resident of Ohio, or an Ohio corporation, possess the requisite continuous and systematic contacts with this state." (internal quotation and citation omitted)). Plaintiffs point to evidence that Individual Defendants Kistinger, Olson, and Tsacalis were each a resident of, and domiciled in, Ohio in 2007. Plaintiffs add that each also currently resides in Ohio. *See* D.E. 42-3 (Declaration of Sean Michael Powers and Exhibits) (hereinafter the "Powers Decl."). In addition, Kistinger, Olson, and Tsacalis are each listed as registered to vote in Ohio and have owned property in Ohio. *Id.* at Ex. 4-9. Accordingly, the Court is satisfied that Plaintiffs have fulfilled their burden of a *prima facie* showing that general personal jurisdiction would have been proper as to Individual Defendants Kistinger, Olson, and Tsacalis in the Southern District of Ohio in 2007. *See Does 1-144 v. Chiquita Brands Int'l, Inc.*, 2018 WL 369779, at *7 (D.D.C. Jan. 11, 2018) ("*Chiquita*") ("[T]he Court concludes that personal jurisdiction likely would have been proper as to defendants Aguirre, Kistinger, Olson, and Tsacalis in the Southern District of Ohio in 2007."). The Individual Defendants also did not present evidence to the contrary.

---

operative date for purposes of 28 U.S.C. § 1631."). This Court follows the *Chiquita* decision and assumes, without deciding, that 2007 is the relevant date for purposes of the Section 1631 analysis.

8

Plaintiffs also seek to transfer their suits against Individual Defendants Freidheim and Keiser to the Southern District of Florida pursuant to Section 1631. Pl. Br. at 13-17. In Florida, courts possess general personal jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. Ann. § 48.193 (2016); *see Canale v. Rubin*, 20 So. 3d 463, 466 (Fla. Dist. Ct. App. 2009). Plaintiffs point to evidence that both Freidheim and Keiser are listed as registered to vote in Florida and have owned property in Florida. Powers Decl., Ex. 1-3, 10-11.[8] Accordingly, the Court is satisfied that Plaintiffs have fulfilled their burden of a prima facie showing that Individual Defendants Freidheim and Keiser were subject to the general jurisdiction in the Southern District of Florida in 2007. *See Chiquita*, 2018 WL 369779, at *7 ("[T]he Court

---

[8] As referenced in note 6, *supra*, Plaintiff notes "Defendant Keiser's case is slightly more complex because he may have worked for Chiquita outside the United States in 2007, and for much of the time period relevant to Plaintiffs' claims he was in Colombia." Plfs. Transfer Br. at 14. However, in its motion, Plaintiffs argue that "[b]y 2012, however, [Keiser] was clearly domiciled in Florida; and, it appears that he may have been so in 2007 as well. Thus, the claims against him should also be transferred to Florida." *Id.* (footnote omitted).

Defendants admit that Keiser was "domiciled in Florida when Plaintiffs amended their complaint in 2012, but not in 2007." Indiv. Defs. Mot. & Opp.at 18. On the other hand, Plaintiffs contend that "Keiser appears to have owned his current Florida residence since 2004; he also maintained a P.O. Box in Florida between 2000 and 2014; and, by 2011, was registered to vote in Broward County. . . . Thus the available evidence suggests that Keiser was domiciled in Florida." Plfs. Transfer Br. at 14-15.

The Court finds that Plaintiffs have fulfilled their minimal burden by making a *prima facie* showing that the case against Keiser "could have been brought" in the Southern District of Florida in 2012. *See D'Jamoos*, 566 F.3d at 109–10 ("While the plaintiff bears the burden of establishing that a court's exercise of personal jurisdiction over a defendant is proper, in the preliminary stages of the litigation . . . that burden is light. Prior to trial, the plaintiff is only required to establish a prima facie showing of jurisdiction." (internal quotations, citations, and brackets omitted)). Yet, once the matter transferred to the Southern District of Florida, Keiser is not foreclosed from moving to dismiss Plaintiffs' suit based on lack of personal jurisdiction.

concludes that personal jurisdiction likely would have been proper as to defendants Freidheim and Keiser in the Southern District of Florida in 2007.").

In sum, the Plaintiffs have fulfilled their "light" burden by providing a *prima facie* showing that satisfies Section 1631's requirement that suits "could have been brought" against Individual Defendants Kistinger, Olson, and Tsacalis in the Southern District of Ohio and against Individual Freidheim and Keiser in the Southern District of Florida in 2007. *See D'Jamoos*, 566 F.3d at 109-10; *Chiquita*, 2018 WL 369779, at *7 (describing that in considering transfer of claims against the same Individual Defendants (plus an additional defendant), "the Court finds that personal jurisdiction over the individual defendants in the proposed transferee courts [of the Southern District of Ohio and the Southern District of Florida, respectively,] would have been proper at the time that plaintiffs filed their original complaint in 2007.").

### b. Transfer to the Southern District of Ohio and the Southern District of Florida, Respectively, is in the Interest of Justice

The parties focus their arguments on whether Plaintiffs' requested transfers would be in the "interest of justice." Plaintiffs argue that transfer and severance of the suits against the Individual Defendants is in the interest of justice because Plaintiffs would face unnecessary and additional statute of limitations arguments if forced to refile. Plfs. Br. at 9-10. Defendants contend that transfer is not in the interest of justice because Plaintiffs had no reasonable basis to believe that this District was a proper forum to file suit against the Individual Defendants, Defs. Motion & Opp. at 7-10, and because Plaintiffs chose this forum based on strategic considerations, *id.* at 10-15. The Individual Defendants request that the Court dismiss Plaintiffs' claims against the Individual Defendants because this suit has imposed substantial and unnecessary costs on the Individual Defendants, *id.* at 15-17, and because the claims against the Individual Defendants

10

should not be severed from Plaintiffs' claims against Chiquita, *id.* at 17-20. The Court finds that transfer and severance of the claims against the Individual Defendants are in the interest of justice.

The parties do not cite to any Third Circuit cases describing interpreting the interest of justice standard; instead, the parties rely on cases that constitute persuasive, but not binding, authority from other circuits. In general, among the factors courts often consider are: the cost and time necessary to file a new suit, *Janvey v. Proskauer Rose, LLP*, 59 F. Supp. 3d 1, 7 (D.D.C. 2014), whether a plaintiff filed in the wrong district in good faith or as a strategic litigating tactic, *Chicosky*, 979 F. Supp. at 321-22, and whether "transfer would unfairly benefit the proponent, . . . impose an unwarranted hardship on an objector, . . . or unduly burden the judicial system." *Britell v. United States*, 318 F.3d 70, 74 (1st Cir. 2003) (internal citations omitted); *see, e.g., Chiquita*, 2018 WL 369779, at *5 ("In deciding whether to transfer a case, courts consider . . . whether the claims would be time-barred upon refiling, whether transfer would prejudice the defendants' position on the merits, and whether transfer would save the plaintiff the time and expense of refiling in a new district.").

Here, Plaintiffs articulate a legitimate concern that if dismissed, rather than transferred, the claims against the Individual Defendants may be time-barred. Plfs. Transfer Br. at 7. The Court is unable to find, as the Individual Defendants suggest, that the Plaintiffs amended their Complaint to include the Individual Defendants in in order to gain a strategic advantage in the case by filing in the wrong district. *See* Indiv. Defs. Mot. & Opp at 10-15. The Individual Defendants do not adequately explain the purported strategic advantage that Plaintiffs' sought. As to the 2012 amendment of the Complaint, it appears that Plaintiffs were reacting to the Supreme Court's decision in *Mohammad*. Instead, Defendants primarily contend that Plaintiffs should have known that this Court was not the proper forum for their claims against the Individual Defendants.

11

However, the Court does not find that Plaintiffs' mistake was in bad faith.⁹ *See Chicosky v. Presbyterian Med. Ctr.*, 979 F. Supp. 316, 321 (D.N.J. 1997) (finding that "it is fair that the action proceed to be decided on the merits where Plaintiff seems to have made a good faith mistake that the action could be maintained in New Jersey."). In sum, although Plaintiffs were ultimately incorrect in their assumption that this District possessed personal jurisdiction over the Individual Defendants, this error does not foreclose transfer pursuant to Section 1631. Moreover, and importantly, the Individual Defendants have not persuasively argued that the transfers would prejudice them on the merits. *See Chiquita*, 2018 WL 369779, at *6 (finding that "[e]ven if plaintiffs were mistaken in believing that this Court had jurisdiction over the individual defendants, plaintiffs' mistakes regarding forum selection do not justify dismissal, particularly where dismissal might spell the end of these claims and transfer would not prejudice the individual defendants' position on the merits."). For these reasons, the Court finds that transfer of the suits against the Individual Defendants pursuant to Section 1631 is in the interest of justice.

---

⁹ The Individual Defendants argue that *Shaffer v. Heitner*, 433 U.S. 186 (1977) should have informed Plaintiffs that this Court could not exercise personal jurisdiction over the Individual Defendants, this Court finds that the Court's holding in *Shaffer* is not dispositive as to whether Plaintiffs had a good faith basis for claiming that this Court possessed personal jurisdiction over the Individual Defendants. In *Shaffer*, the Supreme Court held, in part, that a Delaware court could not exercise jurisdiction over former officers and directors of a Delaware corporation because their positions did not result in "minimum contacts" with the state. *Shaffer*, 433 U.S. at 216. However, the Court cannot find, at this time, that Plaintiffs amended their Complaint in bad faith as opposed to a good faith mistake. *See Chicosky*, 979 F. Supp. 316, 321.

The Individual Defendants cite to *Deleski v. Raymark Indus., Inc.*, 819 F.2d 377 (3d Cir. 1987), and a number of cases outside this Circuit, in support of their motion for dismissal. However, in *Deleski*, the court upheld a district court's dismissal of claims that were clearly time barred at the time they were originally filed. *Id.* at 381. Here, by comparison, the Court is not finding that Plaintiffs' claims were time-barred when originally filed. Instead, the Court is concerned that Plaintiffs' claims would now be time-barred if the Court dismissed the matter.

### c. Severing Plaintiffs' Claims against the Individual Defendants is Appropriate

Lastly, the Court must consider whether severing the claims against the Individual Defendants is appropriate. The Individual Defendants contend that dismissal is warranted because the claims against Chiquita and the Individual Defendants should not be severed. Pursuant to Rule 21, a court may sever claims within the same case. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. *The court may also sever any claim against a party.*" (emphasis added)). The Third Circuit has held that "before dividing the case, the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." *D'Jamoos*, 566 F.3d at 111.

Here, the Court finds that a consideration of all relevant factors weighs in favor of granting Plaintiffs' request for transfer and severance of claims. There will undoubtedly be some overlapping issues in Plaintiffs suits against Chiquita and against the Individual Defendants—but this is not a dispositive consideration.[10] For example, following the Third Circuit's guidance, the

---

[10] The parties dispute the significance of the *D'Jamoos* court's "*see*" citation to *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28 (3d Cir.1993). In *Sunbelt*, the court cautioned that a court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." 5 F.3d at 33–34 (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984)). The Court, however, agrees with Plaintiffs that the inclusion of a "*see*" citation is essential to understanding the import of the Third Circuit's citation to *Sunbelt* because adopting the blanket rule articulated in *Sunbelt* would bar severance in almost all cases— rendering the *D'Jamoos* court's balancing test irrelevant. *See D'Jamoos,* 566 F.3d 94, 111 (3d Cir. 2009) ("[B]efore dividing the case, the District Court *should weigh the factors* favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums.") (emphasis added); *The Bluebook: A Uniform System of Citation* (20 ed.) at 5 (defining a "*see*" signal as showing that "[t]he authority supports, but does not directly state, the proposition").

In *Sunbelt*, the court was ultimately concerned that granting "severance . . . would place each defendant in the position of being able to defend by asserting the absent party's negligence." *Sunbelt*, 5 F.3d at 34. Here, neither Plaintiffs nor the Individual Defendants have

13

district court in *D'Jamoos* found on remand that transfer was appropriate despite "a measure of inefficiency," in part, because "[a]s with any complex litigation, the courts involved will coordinate discovery to ensure that wasteful duplication is avoided, easing any concerns about cost or inefficiency. And, should the [other corporate entity] defendants feel that it is essential that their case be tried in conjunction with [the large corporate entity], they could submit to the jurisdiction of the district court [where the suit against the large corporate entity is being tried]." *D'Jamoos v. Pilatus Aircraft Ltd.*, No. CIV.A. 07-1153, 2009 WL 3152188, at *3 (E.D. Pa. Oct. 1, 2009). The court then found that severance was appropriate under Rule 21 because after "balanc[ing] several considerations, including the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation," all three factors weighed in favor of severance. *Id.* at *3; *see Chiquita*, 2018 WL 369779, at *8 ("Although the individual defendants correctly assert that severance would result in multiple courts assessing the same set of claims and facts, the prospect of multiple suits in different jurisdictions is unavoidable here—and not unusual in multidistrict litigation cases—because Chiquita and other defendants already are facing trial in different districts after pretrial coordination before Judge Marra is complete."). Here, the Court finds that severance of Plaintiffs' claims against the Individual Defendants pursuant to transfer to the proper jurisdictions is appropriate.

---

signaled that this scenario is a reasonable possibility. The *Sunbelt* court also stated that it is generally within a district court's discretion to determine whether a severance was appropriate. *Id.* Therefore, even taking into account the *Sunbelt* court's language cautioning district courts against allowing severance in a blanket fashion, the Court has carefully weighed the referenced factors and determined that severance is appropriate here.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to transfer and to sever (D.E. 42) is **GRANTED**. Plaintiffs' claims against Individual Defendants Kistinger, Olson, and Tsacalis shall be severed and shall be transferred to the United States District Court for the Southern District of Ohio, and Plaintiffs' claims against Individual Defendants Freidheim and Keiser shall be severed and shall be transferred to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1631. Defendant's motion to dismiss the Complaint is **DENIED** (D.E. 55). An appropriate Order accompanies this Opinion.

Dated: January 18, 2017

_____
John Michael Vazquez, U.S.D.J.